# EXHIBIT A

STATE OF MICHIGAN
IN THE CIRCUIT COURT OF WAYNE COUNTY

Ernst & Marko Law, PLC,
and Jonathan Marko,

Plaintiffs/Counter Defendants,

Case No. 19-008709-CB

v.

Hon. Brian Sullivan

Kevin Ernst,

Defendant/Counter Plaintiff.

---

Keefe A. Brooks (P31680)
Brooks Wilkins Sharkey & Turco, PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
248-971-1800
brooks@bwst-law.com
Attorney for Plaintiffs/Counter Defendants

Anthony L. DeLuca (P64874)
Anthony L. DeLuca, P.L.C.
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, Michigan 48230
(313) 821-5905
anthony@aldplc.com
Attorney for Defendant/Counter Plaintiff

Eugene H. Boyle (P42023)
E.H. Boyle, P.C.
14950 East Jefferson Avenue, Suite 200
Grosse Pointe Park, MI 48230
(313) 344-4000
gene@ehboyle.com
Co-Counsel for Defendant/Counter Plaintiff

---

Document received by the MI Wayne 3rd Circuit Court.

**DEFENDANT/COUNTER PLAINTIFF KEVIN ERNST'S ANSWER TO PLAINTIFFS'/COUNTER DEFENDANTS' FIRST AMENDED COMPLAINT**

Defendant/Counter Plaintiff Kevin Ernst, through counsel, states as follows for his answer to Plaintiffs'/Counter Defendants' First Amended Complaint.

1. Mr. Ernst admits the allegations of Paragraph 1.

2. Mr. Ernst admits the allegations of Paragraph 2.

3. Mr. Ernst admits the allegations of Paragraph 3, but denies that the Firm has standing to bring this action because in order for the Firm to commence litigation, a vote of the majority of the members of the Firm was required. Marko did not obtain a vote of the majority of the members of the Firm to commence an action against Mr. Ernst. Because Marko did not have authority to bring an action in the name of the Firm against Mr. Ernst, the Court should dismiss the Firm's claims and remove the Firm as a party to this action.

4. Mr. Ernst admits the allegations of Paragraph 4.

5. Mr. Ernst denies the allegations of Paragraph 5.

6. Mr. Ernst denies the allegations of Paragraph 6.

7. Mr. Ernst admits the allegations of Paragraph 7.

8. Mr. Ernst denies the allegations of Paragraph 8.

9. Mr. Ernst denies the allegations of Paragraph 9.

10. Mr. Ernst denies the allegations of Paragraph 10.

11. Mr. Ernst denies the allegations of Paragraph 11.

12. Mr. Ernst admits the allegations of Paragraph 12.

13. Mr. Ernst admits the allegations of Paragraph 13.

14. Mr. Ernst admits the allegations of Paragraph 14.

Document received by the MI Wayne 3rd Circuit Court.

15. Mr. Ernst denies the allegations of Paragraph 15 and moves to strike the allegations of Paragraph 15 because they are, among other things, scurrilous and not relevant to the claims or defenses in this action and are alleged for an improper purpose.

16. Mr. Ernst denies the allegations of Paragraph 16 and moves to strike the allegations of Paragraph 16 because they are, among other things, scurrilous and not relevant to the claims or defenses in this action and are alleged for an improper purpose.

17. Mr. Ernst denies the allegations of Paragraph 17 and moves to strike the allegations of Paragraph 17 because they are, among other things, scurrilous and not relevant to the claims or defenses in this action and are alleged for an improper purpose.

18. Mr. Ernst denies the allegations of Paragraph 18 and moves to strike the allegations of Paragraph 18 because they are, among other things, scurrilous and not relevant to the claims or defenses in this action and are alleged for an improper purpose.

19. Mr. Ernst denies the allegations of Paragraph 19 and moves to strike the allegations of Paragraph 19 because they are, among other things, scurrilous and not relevant to the claims or defenses in this action and are alleged for an improper purpose.

20. Mr. Ernst denies the allegations of Paragraph 20 and moves to strike the allegations of Paragraph 20 because they are, among other things, scurrilous and not relevant to the claims or defenses in this action and are alleged for an improper purpose.

21. Mr. Ernst denies the implication contained within the allegations of Paragraph 21 and moves to strike the allegations of Paragraph 21 because they are, among other things, scurrilous

Document received by the MI Wayne 3rd Circuit Court.

and not relevant to the claims or defenses in this action and are alleged for an improper purpose.

22. Mr. Ernst denies the allegations of Paragraph 22.

23. Mr. Ernst denies the allegations of Paragraph 23. In further answer, Mr. Ernst states that Marko voluntarily reinstated Mr. Ernst as a fifty percent (50%) equal member of the Firm immediately following Mr. Ernst's reinstatement with the State Bar to practice law, during the time period referenced in Paragraph 23.

24. Mr. Ernst denies the allegations of Paragraph 24 and moves to strike the allegations of Paragraph 24 because they are, among other things, scurrilous and not relevant to the claims or defenses in this action and are alleged for an improper purpose.

25. Mr. Ernst denies the allegations of Paragraph 25 and moves to strike the allegations of Paragraph 25 because they are, among other things, scurrilous and not relevant to the claims or defenses in this action and are alleged for an improper purpose.

26. Mr. Ernst admits the allegations of Paragraph 26.

27. Mr. Ernst denies the allegations of Paragraph 27. In further answer Mr. Ernst states that during the period identified in Paragraph 27, the Firm employed two associate attorneys and a staff of paralegals and assistants worked full time helping "carry on the business of the Firm." During this time Mr. Ernst also worked full time drafting substantive briefs and pleadings, developing complex legal theories, and otherwise working full time as he always had, with the exception of conducting depositions, having client contact, or appearing in court.

28. Mr. Ernst admits the allegations of Paragraph 28.



Document received by the MI Wayne 3rd Circuit Court.

29. Mr. Ernst admits the allegations of Paragraph 29.

30. Mr. Ernst denies the allegations of Paragraph 30.

31. Mr. Ernst denies the allegations of Paragraph 31.

32. Mr. Ernst denies the allegations of Paragraph 32.

33. Mr. Ernst denies the allegations of Paragraph 33.

34. Mr. Ernst denies the allegations of Paragraph 34.

35. Mr. Ernst denies the allegations of Paragraph 35.

36. Mr. Ernst denies the allegations of Paragraph 36.

37. Mr. Ernst denies the allegations of Paragraph 37.

38. Mr. Ernst denies the allegations of Paragraph 38.

39. Mr. Ernst denies the allegations of Paragraph 39.

40. Mr. Ernst admits the allegations of Paragraph 40. In further answer, Mr. Ernst states Marko formed "his own firm, known as Marko Law PLC" on May 1, 2019, and began actively competing with the Firm well over a month before he commenced this action on June 24, 2019, to dissolve the Firm. By "forming his own firm, known as Marko Law PLC," while he is still a member manager of the Firm, Marko blatantly breached his fiduciary duties as a member manager of the Firm.

41. Mr. Ernst admits the allegations of Paragraph 41, but clarifies that he only formed the new firm to mitigate his damages. After forming a new competing firm in May 2019, Marko

Document received by the MI Wayne 3rd Circuit Court.

continued to use the Firm's money and resources to pay the expenses of his new competing firm without contributing any funds to the Firm, and looted the Firm's assets, including the Firm's bank account, which ultimately caused the Firm to become insolvent. Mr. Ernst has filed a counter claim to remove Marko as a member of the Firm and for damages resulting from Marko's blatant breaches of his fiduciary duties.

42. Mr. Ernst denies the allegations of Paragraph 42.

43. Mr. Ernst denies the allegations of Paragraph 43.

44. Mr. Ernst can neither admit nor deny the allegations contained in Paragraph 44 as stated.

45. Mr. Ernst denies the allegations of Paragraph 45 and in further answer states that www.markolaw.com does not redirect traffic to an Ernst, Charara & Lovell PLC website.

46. Mr. Ernst denies the allegations of Paragraph 46. In further answer, Mr. Ernst states that when Marko formed his new competing law firm in May 2019, he created a website for his new competing law firm that attempted to "try and trade on the" goodwill of Mr. Ernst, specifically Mr. Ernst's jury verdicts, in blatant violation of the Michigan Rules of Professional Conduct.

47. Mr. Ernst can neither admit nor deny the allegations contained in Paragraph 47 as stated. In further answer, no response is required because the allegations contained in Paragraph 47 are conclusions of law and not factual allegations.

48. Mr. Ernst denies the allegations of Paragraph 48.

49. Mr. Ernst denies the allegations of Paragraph 49.



Document received by the MI Wayne 3rd Circuit Court.

50. Mr. Ernst incorporates all previous responses.

51. Mr. Ernst denies the allegations of Paragraph 51 because in order to seek dissolution pursuant to Michigan's limited liability act, Marko needed to bring an action against the Firm, which he has failed to do.

52. Mr. Ernst denies the allegations of Paragraph 52.

53. Mr. Ernst denies the allegations of Paragraph 53.

54. Mr. Ernst incorporates all previous responses.

55. Mr. Ernst denies the allegations of Paragraph 55.

56. Mr. Ernst denies the allegations of Paragraph 56.

57. Mr. Ernst denies the allegations of Paragraph 57.

58. Mr. Ernst incorporates all previous paragraphs.

59. Mr. Ernst denies the allegations of Paragraph 59.

60. Mr. Ernst denies the allegations of Paragraph 60.

61. Mr. Ernst denies the allegations of Paragraph 61.

62. Mr. Ernst denies the allegations of Paragraph 62.

63. Mr. Ernst denies the allegations of Paragraph 63.

64. Mr. Ernst incorporates all previous paragraphs.

65. Mr. Ernst denies the allegations of Paragraph 65.

Document received by the MI Wayne 3rd Circuit Court.

66. Mr. Ernst cannot admit or deny the allegations of Paragraph 66 as stated. In further answer, no response is required because the allegations contained in Paragraph 66 are conclusions of law and not factual allegations.

67. Mr. Ernst denies the allegations of Paragraph 67.

68. Mr. Ernst denies the allegations of Paragraph 68. In further answer, no response is required because the allegations contained in Paragraph 68 are conclusions of law and not factual allegations.

69. Mr. Ernst denies the allegations of Paragraph 69. In further answer, no response is required because the allegations contained in Paragraph 69 are conclusions of law and not factual allegations.

70. Mr. Ernst denies the allegations of Paragraph 70. In further answer, no response is required because the allegations contained in Paragraph 70 are conclusions of law and not factual allegations.

71. Mr. Ernst denies the allegations of Paragraph 71. In further answer, no response is required because the allegations contained in Paragraph 71 are conclusions of law and not factual allegations.

72. Mr. Ernst incorporates all previous responses.

73. Mr. Ernst admits the allegations of Paragraph 73.

74. Mr. Ernst admits the allegations of Paragraph 74. In further answer, no response is required because the allegations contained in Paragraph 74 are statements of law and not factual



Document received by the MI Wayne 3rd Circuit Court.

allegations.

75. Mr. Ernst denies the allegations of Paragraph 75.

76. Mr. Ernst denies the allegations of Paragraph 76.

77. Mr. Ernst denies the allegations of Paragraph 77.

78. Mr. Ernst denies the allegations of Paragraph 78. In further answer, Mr. Ernst states that Marko voluntarily reinstated Mr. Ernst as a fifty percent (50%) equal member of the Firm immediately following Mr. Ernst's reinstatement with the State Bar to practice law.

79. Mr. Ernst denies the allegations of Paragraph 79.

80. Mr. Ernst incorporates all previous paragraphs.

81. Mr. Ernst denies the allegations of Paragraph 81.

82. Mr. Ernst denies the allegations of Paragraph 82.

83. Mr. Ernst denies the allegations of Paragraph 83.

84. Mr. Ernst denies the allegations of Paragraph 84.

85. Mr. Ernst incorporates all previous paragraphs.

86. Mr. Ernst denies the allegations of Paragraph 86.

87. Mr. Ernst denies the allegations of Paragraph 87.

88. Mr. Ernst denies the allegations of Paragraph 88.

Document received by the MI Wayne 3rd Circuit Court.

WHEREFORE, Mr. Ernst prays that this Honorable Court dismiss the First Amended Complaint with prejudice, or, in the alternative, that the Court enter a judgment of no cause of action in favor of Mr. Ernst, with costs and fees to be awarded as allowed by law.

Further, Mr. Ernst prays that this Court ascertains and declares that the allegations in this First Amended Complaint are frivolous and that the Court award all costs and attorney fees to Mr. Ernst and against Marko and his counsel, jointly and severally.

DATED: September 11, 2019

Respectfully submitted,

Anthony L. DeLuca, PLC

/s/ Anthony L. DeLuca
Anthony DeLuca (P-64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905
anthony@aldplc.com
Attorney for Defendant/Counter Plaintiff
Kevin Ernst

E.H. Boyle, P.C.

/s/ Eugene H. Boyle
Eugene H. Boyle (P42023)
14950 East Jefferson Avenue, Suite 200
Grosse Pointe Park, MI 48230
(313) 344-4000
gene@ehboyle.com
Co-Counsel for Defendant/Counter Plaintiff
Kevin Ernst

Document received by the MI Wayne 3rd Circuit Court.

AFFIRMATIVE DEFENSES

1. The First Amended Complaint fails to state a claim upon which the Court can grant any relief.
2. The Firm did not have the proper or necessary authority to bring this action.
3. The First Amended Complaint and all of its claims are moot.
4. The claims in the First Amended Complaint are barred by the wrongful actions of Marko as more fully set forth in the First Amended Counter Complaint.
5. The claims of the First Amended Complaint are all barred by Marko's first material breach of any agreements between the parties.
6. Marko has unclean hands.
7. The claims of the First Amended Complaint are barred by the failure of Marko to make a tender back prior to asserting the claims.
8. The claims of the First Amended Complaint are barred by waiver and estoppel.
9. The claims of the First Amended Complaint are barred by fraud as more fully set forth in the First Amended Counter Complaint.
10. The claims of the First Amended Complaint are barred by want and or/failure of consideration.
11. The claims of the First Amended Complaint are barred because Marko did not mitigate his damages, if any.
12. The claims of the First Amended Complaint are barred by the statute of frauds.
13. The claims of the First Amended Complaint are barred by the statute of limitations.

Document received by the MI Wayne 3rd Circuit Court.

WHEREFORE, Mr. Ernst prays that this Honorable Court dismiss the First Amended Complaint with prejudice, or, in the alternative, that the Court enter a judgment of no cause of action in favor of Mr. Ernst, with costs and fees to be awarded as allowed by law.

Further, Mr. Ernst prays that this Court ascertains and declares that the allegations in this First Amended Complaint are frivolous and that the Court award all costs and attorney fees to Mr. Ernst and against Marko and his counsel, jointly and severally.

DATED: September 11, 2019

Respectfully submitted,

Anthony L. DeLuca, PLC

/s/ Anthony L. DeLuca
Anthony DeLuca (P-64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905
anthony@aldplc.com
Attorney for Defendant/Counter Plaintiff
Kevin Ernst

E.H. Boyle, P.C.

/s/ Eugene H. Boyle
Eugene H. Boyle (P42023)
14950 East Jefferson Avenue, Suite 200
Grosse Pointe Park, MI 48230
(313) 344-4000
gene@ehboyle.com
Co-Counsel for Defendant/Counter Plaintiff
Kevin Ernst

Document received by the MI Wayne 3rd Circuit Court.

CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon all counsel of record through the Court's electronic filing system on September 11, 2019, contemporaneously with the filing of the document.

/s/ *Anthony DeLuca*

Document received by the MI Wayne 3rd Circuit Court.

19-008709-CB FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 9/3/2019 9:57 AM Carlita McMiller

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**Ernst & Marko Law, PLC, and Jonathan R. Marko,**

Plaintiffs,

v

**Kevin S. Ernst,**

Defendant.

Hon. Brian Sullivan

Case No. 19-008709-CB

---

BROOKS WILKINS SHARKEY & TURCO PLLC
Keefe A. Brooks (P31680)
Steve M. Ribiat (P45161)
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800 / 248-971-1801 Fax
brooks@bwst-law.com
ribiat@bwst-law.com

E.H. BOYLE, P.C.
Eugene H. Boyle (P42043)
14950 East Jefferson Avenue
Suite 200
Grosse Pointe Park, MI 48230
One of the Attorneys for Defendant
(313) 344-4000
gene@ehboyle.com

ANTHONY L. DELUCA, P.L.C.
Anthony L. DeLuca (P64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905
anthony@aldplc.com

---

**FIRST AMENDED VERIFIED COMPLAINT**
**FOR DISSOLUTION AND OTHER RELIEF**

Plaintiffs Jonathan R. Marko ("Marko") and Ernst & Marko Law, PLC (the "Firm"), for their First Amended Verified Complaint for dissolution of the Firm, and for other/additional relief against Defendant Kevin S. Ernst ("Ernst"), state as follows:

1. Marko is a resident of Wayne County, Michigan and conducts business in Wayne County, Michigan.

2. Ernst is a resident of Wayne County, Michigan and conducts business in Wayne County, Michigan.

3. The Firm has its registered office in and conducts business in Wayne County, Michigan.

4. This action is a business dispute within the meaning of MCL 600.8031 et seq. in that one of the parties is a business enterprise and the subject matter of the suit involves the rights and obligations of the members of that business enterprise.

5. The amount in controversy herein is in excess of $25,000 exclusive of interest, costs or attorney fees and this Verified Complaint seeks equitable relief within the exclusive jurisdiction of this Court.

6. In late 2015, Marko decided to form a firm with Ernst for the practice of law.

7. On December 14, 2015, Articles of Organization were endorsed by the State of Michigan for the formation of a professional limited liability company, the Firm.

8. While Marko and Ernst agreed they would own the Firm equally, no operating agreement or other agreement was ever entered into among the members of the Firm regarding the operation or governance of the Firm, or any other matters pertaining to the business of the Firm.

9. Unknown to Marko at the time the Firm was formed, Ernst has a serious substance abuse problem, namely Ernst is an alcoholic.

10. Unknown to Marko at the time the Firm was formed, Ernst had two prior convictions for driving while under the influence of alcohol.

11. In very early 2017, approximately one year after the Firm opened for business, Ernst was arrested and charged with his third offense of driving while under the influence of alcohol, Oakland County case no. 17-261695-FH. Since this was Ernst's third offense, it was charged as a felony.

12. Ernst was eventually convicted of this third offense of driving while under the influence, a felony, and was sentenced to jail time and probation.

13. As a result of the felony conviction, Ernst's license to practice law in the State of Michigan was automatically suspended on September 5, 2017.

14. In later disciplinary proceedings, Ernst's license to practice law in the State of Michigan was suspended for a period of 180 days, effective September 5, 2017.

15. Shortly before Ernst's felony conviction and entry of the above Consent Order of Discipline, Ernst was involved in a traffic accident on August 18, 2017. Ernst fled the scene of the accident.

16. Ernst was chased down by the occupants in the other vehicle and identified by them as the person who had fled the scene. Ernst was thereupon arrested and charged with a third OWI and leaving the scene of an accident.

17. On information and belief, Ernst did not disclose the August 18, 2017 arrest to the jurisdiction prosecuting him for the early 2017 felony/third offense.

18. On information and belief, Ernst did not disclose the August 18, 2017 arrest to the Attorney Discipline Board in negotiating the Consent Order of Discipline.

19. Because Ernst had not yet been convicted in the 2017 OWI, he was mistakenly charged with a third OWI when it was actually his fourth.

20. The 2018 charge was set for trial in April of 2018. The occupants of the other vehicle who had identified Ernst as the driver of the vehicle that fled the scene did not appear for trial. The charges against Ernst were shortly thereafter dismissed.

21. Ernst did not disclose to Marko the existence of the fourth criminal charge. Ernst also did not disclose to Marko that he was delaying applying for reinstatement to practice law because of the pendency of that fourth criminal charge.

22. In addition to all of the foregoing, Marko had discovered that Ernst has used money of the Firm to fund the defense of both of the above-referenced criminal proceedings and the ethics proceedings brought in the 2017 and 2018 matters.

23. During the foregoing time-period, Marko repeatedly told Ernst that the two of them needed to dissolve the Firm and go their separate ways.

24. Notwithstanding Ernst's completion of his time in jail and the conditions of his probation, Ernst continues to abuse alcohol. Following his release from probation, Ernst's alcohol abuse has only gone from bad to worse.

25. Ernst was without a license to practice law for over a year. Following the September 5, 2017 suspension, Ernst delayed applying for reinstatement. This was most likely in view of the 2018 charges pending against him discussed above.

26. Ernst did not receive a license to resume practicing law until October 10, 2018, over 13 months after his license was suspended.

27. During for foregoing 13-month period (and after), Marko was forced to carry on the business of the Firm by himself.

28. During the foregoing 13-month period, the Firm name had to be changed to "Marko Law."

29. During the foregoing 13-month period, the Firm web presence was changed to www.markolaw.com.

30. During the forgoing 13-month period, the Firm used and benefited from the use of the web URL www.markolaw.com.

31. Although it was Defendant Ernst who apparently paid the few dollars to Go Daddy to register the URL www.markolaw.com, that was clearly done as an agent for the Firm, and the URL www.markolaw.com clearly became an asset of the Firm.

32. Additionally and alternatively, under the work for hire doctrine, Defendant Ernst's registration of the URL www.markolaw.com was as an agent of the Firm and for the benefit of the Firm.

33. Ernst has essentially ceased practicing law and/or generating cases for others at the Firm.

34. Prior to the filing of this action, Ernst was out of the offices of the Firm much more than he appeared in the offices.

35. Ernst was not and is not regularly supervising or directing the handling of client matters by associates of the Firm.

36. Ernst has expressed to Marko that Ernst does not need to practice law or generate cases in order to remain an owner of the Firm.

37. During Ernst's complete absence from the Firm, Marko has been able to generate hundreds of cases that Ernst had no role in either generating or handling, and Marko and the associates of the Firm were handling over 200 client matters at the time this action was filed.

38. The Firm cannot achieve its objectives in light of the foregoing and the complete deadlock between Ernst and Marko regarding the operations of the Firm.

39. Marko has repeatedly demanded that the Firm be dissolved, and Ernst has repeatedly refused. There is therefore a deadlock regarding the need for dissolution of the Firm.

40. Marko has formed his own firm, known as Marko Law PLC.

41. Ernst has formed a new firm, known as Ernst Charara & Lovell PLC.

42. Notwithstanding the separation of the parties' practices and the formation of new firms, Ernst continues to use the name and likeness of Marko to advertise for business.

43. In addition, Ernst has configured the URL www.markolaw.com to direct traffic to his firm's web site.

44. Marko has made repeated demands that Ernst cease using his name and likeness in advertising for business.

45. Marko has made repeated demands that Ernst cease using www.markolaw.com to redirect web traffic to Ernst's firm.

46. As of the date of the filing of this First Amended Verified Complaint, Ernst continues to try and trade on the name and goodwill of Marko's name and likeness.

47. Ernst has no legal right to use the name or likeness of Marko for any purpose.

48. Ernst's continued use of Marko's name and the re-directing of traffic from www.markolaw.com to his own firm has caused, and is likely to continue to cause, consumer confusion.

49. Marko has attempted to mitigate the harm caused by Ernst's continued use of Marko's name and the URL www.markolaw.com, by creating a temporary site at www.jmarkolaw.com. The similarity of these URL's, however, is likely to cause yet further consumer confusion.

**COUNT I-Dissolution of the Firm**

50. Plaintiffs incorporate here all of the foregoing allegations.

51. Marko seeks dissolution of the Firm pursuant to the Michigan limited liability act, and MCL 450.4802 in particular.

52. In view of the erratic, and sometimes unlawful, behavior of Ernst, the Firm cannot continue to properly accomplish the objectives for which it was formed.

53. In view of the deadlock between Ernst and Marko, and for the protection of the clients of the Firm, the Firm should be dissolved, with the clients informed of the proceedings and given the choice to retain Ernst, Marko or alternative counsel.

WHEREFORE, Plaintiffs respectfully request that the Court enter a decree of dissolution of the Firm, and grant such further or alternative relief as the Court deems appropriate.

**COUNT II-Reimbursement by Ernst of Personal Expenditures**

54. Plaintiffs incorporate here all of the foregoing allegations.

55. Ernst has misappropriated funds of the Firm for non-Firm uses, to wit: payment of fees and expenses incurred in Ernst's criminal and disciplinary proceedings.

56. The funds used by Ernst are and were property of the Firm.

57. Ernst misappropriated approximately $40,000 of Firm funds for the above-referenced non-Firm matters.

WHEREFORE, Plaintiff Ernst & Marko respectfully requests that the Court enter an order directing Ernst to return the misappropriated funds to the Firm's accounts, and grant such further or alternative relief as the Court deems appropriate.

**COUNT III - False Designation of Origin**

58. Plaintiffs incorporate here all of the foregoing allegations.

59. Ernst's use of Marko's name and the URL www.markolaw.com constitutes a false designation of origin and a false representation with respect to the origin of Ernst's services.

60. Ernst's continued use of Marko's name and the URL www.markolaw.com has caused confusion and is likely to continue to cause confusion, mistake or deception, and is likely to create the false impression that Marko is still affiliated in some fashion with Ernst's practice of law.

61. Ernst's continued use of Marko's name and the URL www.markolaw.com is without authorization or consent.

62. Ernst's continued use of Marko's name and the URL www.markolaw.com in connection with the offering of his legal services falsely suggests that Marko is connected with, affiliated with or related to Ernst.

63. Ernst's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

WHEREFORE, Plaintiff Marko prays that this Court grant the following relief:

a. Preliminarily and permanently enjoin Ernst from use of the URL www.markolaw.com;

b. Ascertain and declare that the URL www.markolaw.com became an asset of the Firm upon its registration and use for the over 13 months that Ernst was suspended from practicing law;

c. Award to Marko all damages, actual and statutory, allowed by law;

d. Award to Marko all costs and attorneys fees incurred in bringing this action; and

e. Award to Marko just alternative or additional relief as the Court deems appropriate.

## Count IV - Cybersquatting

64. Marko incorporates here all of the foregoing allegations.

65. Ernst's use of the URL www.markolaw.com has been in bad faith and with the intent of profiting from the use of Marko's name and goodwill.

66. Ernst does not and cannot offer any goods or services through the URL www.markolaw.com.

67. Ernst uses the URL www.markolaw.com for the sole purpose of re-directing traffic to his firm.

68. Ernst's use of the URL www.markolaw.com constitutes cybersquatting in violation of 15 U.S.C. § 1125(d).

69. Marko's remedy at law arising out of Ernst's unlawful use of www.markolaw.com is not adequate to fully compensate him. Accordingly, Marko is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

70. Further, by reason of Ernst's acts, Marko is entitled to recover Ernst's profits, actual damages and the costs of this action, or statutory damages under 15 U.S.C. § 1117, on election of Marko, in the amount of $100,000.00 for the use and trafficking in the URL www.markolaw.com with a bad faith intent to profit.

71. Due to the large number of demands communicated to Ernst and his attorneys to cease this unlawful activity prior to having to file this action, the case is an exceptional one, entitling Marko to his costs and attorneys' fees under 15 U.S.C. § 1117.

WHEREFORE, Plaintiff Marko prays that this Court grant the following relief:

a. Preliminarily and permanently enjoin Ernst from use of the URL www.markolaw.com;

b. Ascertain and declare that the URL www.markolaw.com became an asset of the Firm upon its registration and use for the over 13 months that Ernst was suspended from practicing law;

c. Award to Marko all damages, actual and statutory, allowed by law;

d. Award to Marko all costs and attorney's fees incurred in bringing this action; and

e. Award to Marko just alternative or additional relief as the Court deems appropriate.

**Count V - Breach of Fiduciary Duties**

72. Plaintiffs incorporate here all of the allegations above.

73. Ernst owed the Firm fiduciary duties, including to act in good faith and promote the interests of the limited liability company, including, but not necessarily limited to, the duty of loyalty and the duty of care.

74. Pursuant to MCL § 450.4404, a manager shall discharge the duties of manager in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner the manager reasonably believes to be in the best interests of the limited liability company.

75. As explained in previous paragraphs, Ernst did not discharge his duties in good faith, with the care that an ordinarily prudent person in a like position would exercise under similar circumstances, or in a manner he reasonably believed to be in the best interests of the Firm.

76. Ernst has committed multiple breaches of his fiduciary duties as stated in previous paragraphs, and additionally by, among other things, diverting, misappropriating or attempting to divert and misappropriate Firm assets, wasting Firm assets, interfering with client relations with the Firm, all while taking full advantage of the Firm's pre-existing infrastructure and its resources, and using those resources to facilitate the multiple breaches of his fiduciary duties.

77. Even before a petition was filed to dissolve the firm, Ernst was using the Firm and its resources to secretly service clients, often times with firm resources, and then pocketing the money (stealing) for himself, without putting it on the books of the firm. For example, Ernst would agree to a cash payment for attorney representation, keep the cash payment for himself and not record it, and not list the client on the Firm tracking system, in order to defraud Marko and the Firm.

78. Ernst also violated his fiduciary duties by losing his law license for over a year; engaging in criminal activities, one of which caused him to be imprisoned for over a month; failing to perform his duties as an attorney and member of the Firm; failing to generate and/or bring in business to the Firm; failing to show up for work; failing to attend court appearances and otherwise service clients; failing to attend partner meetings; only taking 3 depositions in nearly four years; among other things.

79. As a result of Ernst's multiple breaches of his fiduciary duties, the Firm has suffered and continues to suffer damages.

WHEREFORE, Plaintiff Ernst & Marko prays for entry of a judgment in favor of it and against Ernst in whatever amount in excess of $25,000 it is found entitled to, plus interest, costs and attorney's fees as allowed by law.

**Count VI - Breach of Contract**

80. Marko incorporates here all of the allegations above.

81. Marko shared one-half of money he generated for the firm under the express or implied promise that Ernst would respect, adhere to, and otherwise comply and abide by the fiduciary duties he owed the Firm as a member manager of the Firm, so long as he remained a member of the Firm.

82. As explained previously, Ernst failed in almost every way imaginable to comply with his fiduciary duties.

83. Ernst's conduct described breached his express and/or implied agreement with Marko.

84. As a result, Marko has suffered damages and is entitled to the return of all funds Ernst received from the Firm.

WHEREFORE, Plaintiff Marko prays for entry of a judgment in favor of him and against Ernst in whatever amount in excess of $25,000 it is found entitled to, plus interest, costs and attorney's fees as allowed by law.

**Count VII- Unjust Enrichment**

85. Marko incorporates here all of the allegations above.

86. Alternatively, by retaining one half of the profits of the Firm under the circumstances, Ernst has been unjustly enriched well over a million dollars.

87. Given the circumstances, it would be an absolute inequity for Ernst to be entitled to retain the *over* $1 million dollars Marko paid to him while Ernst was violating his fiduciary duties and stealing from the Firm.

88. Ernst should be required to return the over $1 million dollars he was paid from the Firm.

WHEREFORE, Plaintiff Ernst & Marko prays for entry of a judgment in favor of it and against Ernst in whatever amount in excess of $25,000 it is found entitled to, plus interest, costs and attorney's fees as allowed by law.

Respectfully submitted,

BROOKS WILKINS SHARKEY & TURCO PLLC

By: /s/ Keefe A. Brooks
Keefe A. Brooks (P31680)
Steve M. Ribiat (P45161)
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800
brooks@bwst-law.com
ribiat@bwst-law.com

DATED: September 3, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Keefe A. Brooks
Keefe A. Brooks (P31680)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800
brooks@bwst-law.com

# VERIFICATION

I, Jonathan R. Marko, state that the factual statements in the above Verified Complaint are all true and accurate to the best of my knowledge and information.

______________________
Jonathan R. Marko

Sworn to and subscribed before
me this 3rd day of September, 2019

______________________
Notary Public
My commission expires: 12-6-24

MARISSA A WILLIAMS
Notary Public - State of Michigan
County of Wayne
My Commission Expires Dec 6, 2024
Acting in the County of Wayne

19-008709-CB FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 9/3/2019 9:50 AM Inga Robertson

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**Ernst & Marko Law, PLC, and Jonathan R. Marko**,

Plaintiffs,

v

**Kevin S. Ernst**,

Defendant.

Hon. Brian Sullivan

Case No. 19-008709-CB

---

BROOKS WILKINS SHARKEY & TURCO PLLC
Keefe A. Brooks (P31680)
Steve M. Ribiat (P45161)
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800 / 248-971-1801 Fax
brooks@bwst-law.com
ribiat@bwst-law.com

E.H. BOYLE, P.C.
Eugene H. Boyle (P42043)
14950 East Jefferson Avenue
Suite 200
Grosse Pointe Park, MI 48230
One of the Attorneys for Defendant
(313) 344-4000
gene@ehboyle.com

ANTHONY L. DELUCA, P.L.C.
Anthony L. DeLuca (P64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905
anthony@aldplc.com

---

**PLAINTIFFS/COUNTER-DEFENDANTS' ANSWER TO DEFENDANT ERNST'S FIRST AMENDED COUNTER COMPLAINT**

Plaintiffs/Counter-Defendants Jonathan R. Marko ("Marko") and Ernst & Marko Law, PLC (the "Firm"), by their attorneys Brooks Wilkins Sharkey & Turco PLLC, for their Answer to Defendant Ernst's First Amended Counter-Complaint, state as follows:

1. Plaintiffs admit that they filed a lawsuit against Ernst on June 24, 2019. Plaintiffs deny that the lawsuit was filed improperly or without authority to do so. Given Ernst's alcoholism, inability to "vote" when in a drunken stupor, and complete abdication of his responsibilities to the firm and its clients, the lawsuit was necessary.

2. Denied except for that Ernst filed a motion dismiss. Marko had demanded for years that the firm be dissolved due to Ernst's alcoholism and complete abdication of his responsibilities to the firm and its clients. Marko made repeated written demands to Ernst before commencing this action. Specifically, on May 23rd, 2019, Marko informed Ernst in writing that he would be filing this dissolution action after Ernst did not appear for several scheduled partners' meetings to discuss dissolution. Ernst went to the bar instead of attending the most recent partners' meeting. Five days later, on May 28, 2019, Marko gave Ernst dissolution paperwork and made a written demand to dissolve the firm. Ernst refused to sign the paperwork, necessitating the present dissolution action.

3. Denied. Marko had authority to file the instant action, and indeed had an ethical responsibility to do so in order to protect the firm's clients. Moreover, Ernst was informed in writing on May 23rd (and many times prior to that) that Marko would be forming a new law firm in order to service the current clients given that the firm was unable to do so with Ernst as a partner.

4. Denied.

5. Admit that jurisdiction and venue is proper.

6. Admit.

7. Admit.

8. Admit

9. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

10. Admit.

11. Admit.

12. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

13. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs, and further state that Ernst left the employment with Buck Davis under adverse terms related to Ernst's handling of client matters.

14. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

15. Denied. Ernst declared bankruptcy on June 4, 2009. He was a relatively obscure attorney given his years of practice prior to joining Marko. As far as Marko is aware, Ernst has not been in Court in over two years except for in matters where he is a Defendant, and spends the majority of his time at the bar by himself.

16. Plaintiffs admit that Ernst was part of a legal team comprised of multiple attorneys (including Marko) that obtained a $36.6 million-dollar verdict that Ernst was never able to recover. The Court remitted the verdict, and then on June 15, 2017, the district court ordered a new trial. Shortly thereafter Ernst lost his law license and Marko took over complete handling of that case and was able to negotiate a settlement of the matter. For the remaining allegations, Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

17. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

18. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

19. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

20. Denied. Marko graduated near the top of his class from American University in Washington, D.C, in 2008, not 2009. American University was a tier 1 law school at the time.

21. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs, but further note that Ernst declared bankruptcy in 2009, casting doubt on his claim of a "successful law practice."

22. Admit.

23. Denied in the form presented.

24. Plaintiffs admit that Marko worked for Geoffrey Fieger but deny that it was for only one year.

25. Admit.

26. Denied. Marko never "approached Ernst" and told him that "he had nowhere to go."

27. Admit.

28. Denied. Ernst knew exactly why Marko was leaving the Rasor Law Firm: Marko's former employer, James Rasor, stole approximately $200,000 in attorney fees from Marko. Marko never asked Ernst to be his partner. Rather, Marko confided in Ernst that Rasor had stolen from him. Ernst then proposed and encouraged Marko leave Rasor and join him. Ernst did not disclose

to Marko that he had recently gone bankrupt; that he was an alcoholic; that his firm was unprofitable, and that Ernst generated virtually no business or his own; or that he had mental health issues.

29. Denied.

30. Denied in the form presented. At the time Ernst induced Marko to leave Rasor and join him, Ernst had a single assistant / employee working for him, generated virtually no business, and recently was bankrupt, so it can hardly be said he had an "established law practice".

31. Denied. Ernst knew that Rasor had stolen funds from Marko and that Rasor was going to file liens on many of Marko's current clients that were coming with Marko. Ernst agreed to represent Marko in his matter against Rasor for a 1/3 standard contingency fee, with the total fee going to the new law firm formed by Marko and Ernst (Ernst & Marko Law).

32. Denied.

33. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs. Plaintiffs further note that Rasor's pleadings were riddled with fraud, and that Ernst himself was sued personally by Rasor, who alleged that Ernst engaged in fraudulent activity and sought millions from Ernst.

34. Rasor's counterclaim speaks for itself and Marko has filed a motion to dismiss the pleading. Plaintiffs further note that the attorney who originally filed that complaint on behalf of Rasor, has withdrawn from the litigation, and subsequently sued Rasor himself.

35. Denied. This assertion is laughable given Ernst has lost his license to practice law for his third OUIL, and was subsequently charged with a fourth OUIL for crashing his vehicle on the highway into an innocent driver and then fleeing the scene. He was subsequently apprehended by the police and arrested.

36. Denied.

37. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

38. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

39. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

40. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

41. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

42. Denied.

43. Denied. Marko never refused to submit to a breath test. Marko was never charged with any alcohol related offense. Indeed, Marko was cited for a simple noise violation, which was subsequently dismissed by the prosecutor and police.

44. Denied in the form presented. Ernst hardly worked and instead relied on Marko to generate business and do most of the work at the firm so he could go to the bar. In the first year of the firm, Ernst spent over a month in Hawaii. And attorney Dean Elliot did the vast majority of the work in the *Jennings v Fuller* case.

45. Denied. Marko did the majority of the work on the lien battles between the Rasor Law Firm and EML, even though EML realized over a million dollars in attorney fees as a result of these liens. Ernst hardly ever appeared in Court.

46. Denied. Ernst hardly worked, and his behavior and thoughts became more erratic and bizarre as time went on.

47. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

48. Denied. Marko actively contributed to the Jennings case, including helping with research and trial strategy, and coordinating and obtaining expert witnesses for the case. Ernst did not obtain the necessary expert witnesses to prosecute the case, which could have been malpractice. Ernst never obtained an expert psychiatrist, nor did Ernst obtain a police practices / procedure expert. Marko had to retain these experts. Also, Ernst did not hire a jury consultant, so Marko had to obtain a jury consultant as well, and work with these experts on getting them ready for trial.

49. Admit.

50. Admit that Marko negotiated the settlement in *Jennings* after multiple facilitations and significant post trial work. Ernst was suspended from the practice of law at this time and Marko was managing and running the firm 100% by himself at this time. Ernst did not—and indeed could not—work on the Jennings matter after he was suspended from the practice of law.

51. Denied. As stated above, Marko did work on the case. Furthermore, Ernst did not "give" Marko anything. As 50% partner of the firm, Ernst was legally required to share any fee in the matter with Marko, just as Marko had shared millions in legal fees with Ernst. Ernst's claim that Marko made "assurances" related the Jennings matter is a flat out lie. Indeed, Marko personally picked up the funds in the Jennings matter after he negotiated the settlement amount, and met with the client to sign the check. At this time, Ernst was suspended and prohibited from even talking to Mr. Jennings under the ethics rules.

52. Denied. Marko has generated more fees from the firm than Ernst ever has or will, even if Jennings was not included. However, as previously stated, Marko negotiated and settled the Jennings matter while Ernst was suspended and prohibited from practicing law.

53. Denied. Marko further notes that there would be no firm without him.

54. Plaintiffs can neither admit nor deny for lack of sufficient knowledge or information and leave the Defendant to his proofs.

55. Denied. Marko never committed any malpractice. Furthermore, the firm was not sued twice for legal malpractice.

56. Denied. As previously stated, there were not numerous malpractice lawsuits, and Ernst's assertions in this regard only serve to demonstrate his willingness to lie or his complete detachment from his own firm.

57. Denied.

58. Denied.

59. Denied. The only thing that has jeopardized the future of the firm was Ernst's degenerate alcoholism; his inability and/or unwillingness to do any substantive legal work; and his complete lack of business on his own outside of Marko.

60. Marko admits that when Ernst was confronted with a demand to dissolve the firm, Ernst no-showed to a partner meeting where the matter was to be decided on and then fled to Hawaii. Marko had informed Ernst previously that the firm could not continue because Ernst's actions were harming the clients and Marko, and that the separation was happening one way or another.

61. Admit only that Marko owns Marko Law.

62. Denied. Marko had an absolute right to occupy the premises.

63. Denied in the form presented. The firm's phone number is owned 50% by Marko.

64. Denied.

65. Denied in the form presented. The firm could not ethically take on any new clients under the circumstances because it was in the process of dissolving and Ernst could not be trusted to handle client matters given his mental health issues, severe alcoholism, erratic behavior, and work ethic.

66. Denied.

67. Denied.

68. Denied. Marko did not offer all of the employees an opportunity to join his new firm. Ernst, on the other hand, was so desperate and faced with the prospect of having to do substantive work on client matters, something he has proven unable to do for years, gave away partnerships to associate attorneys with little experience and no book of business on their own outside of Marko.

69. Denied. Marko has happily moved out of the shabby office space that Ernst continues to occupy.

70. Denied.

71. Denied. Marko no longer occupies the space.

72. Denied. The firm has no "referral sources". Marko generated 99% of business for the firm. Clients can choose to go to whoever they want.

73. Denied.

74. Denied. Marko didn't have to encourage anyone to terminate a relationship with Ernst. Tellingly, every single one of Marko's clients came with him.

75. Denied. Marko does not need to make any derogatory statements about Ernst. None of the clients have any idea who Ernst is, because he doesn't do any work, and spends the majority of his time by himself at the bar. Upon information and belief, Ernst has taken 3 depositions in the entire lifetime of the firm (over 3 ½ years); tried a single case; and has been to court a handful of times.

76. Admit that many clients would not want to stay with an attorney described in the preceding paragraph.

77. Admit.

78. Denied. As stated above, Marko was actively involved in the Jennings matter. Moreover, Ernst is unethically advertising on his website regarding Marko's accomplishments.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Denied.

86. Admit that Marko settled this matter. Like the other money, Ernst had absolutely nothing to do with it. In fact, Ernst hasn't settled a case on his own in years.

87. Denied.

88. Denied.

89. Denied

90. Denied.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Plaintiffs incorporate here all of their answers above.

97. Admit.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Plaintiffs incorporate here all of their answers above.

103. The allegations of paragraph 103 are legal conclusions, the accuracy and/or applicability of which are neither admitted nor denied.

104. The allegations of paragraph 104 are legal conclusions, the accuracy and/or applicability of which are neither admitted nor denied.

105. Denied.

106. Denied.

107. Denied.

108. Plaintiffs incorporate here all of their answers above.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. Denied.

114. Plaintiffs incorporate here all of their answers above.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

WHEREFORE, Plaintiffs/Counter-Defendants pray that this Court dismiss the First Amended Counterclaim with prejudice, or alternative, enter a judgment of no cause for action in favor of them and against Ernst, with costs and fees to be awarded as allowed by law. Further, Plaintiffs pray that this Court ascertain and declare that these Counterclaims are frivolous within the meaning of MCR 2.625(A)(2) and MCL 600.2591 and award all costs and attorneys fees to Plaintiffs and against Ernst and his counsel, jointly and severally.

Respectfully submitted,

BROOKS WILKINS SHARKEY & TURCO PLLC

By: /s/ Keefe A. Brooks
Keefe A. Brooks (P31680)
Steve M. Ribiat (P45161)
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800
brooks@bwst-law.com
ribiat@bwst-law.com

DATED: September 3, 2019

## AFFIRMATIVE DFENSES

Plaintiffs/Counter-Defendants, for and as their Affirmative Defenses, state as follows:

1. The First Amended Counter-Complaint fails to state any claim upon which relief can be granted.

2. On information and belief, due to his serious substance abuse problems, Ernst lacks capacity to sue.

3. The First Amended Counter-Complaint and all of its allegations are moot.

4. The claims of the First Amended Counter-Compliant are all barred by the wrongful acts of Defendant Ernst as more fully set forth in Plaintiffs' First Amended Verified Complaint.

5. The claims of the First Amended Counter-Complaint are all barred by Defendant Ernst's first material breach of any agreements between the parties.

6. The claims of the First Amended Counter-Complaint violate the ethics rules of the State Bar of Michigan and enforcing same would violate the public policy of this State.

7. Ernst has unclean hands.

8. The claims of the First Amended Counter-Complaint are barred by the failure of Ernst to make a tender back prior to asserting the claims.

9. The claims of the First Amended Counter-Complaint are barred by waiver and/or estoppel.

10. The claims of the First Amended Counter-Complaint are barred by fraud as more fully set forth in Plaintiffs' First Amended Verified Complaint.

11. The claims of the First Amended Counter-Complaint are barred by want and/or failure of consideration.

WHEREFORE, Plaintiffs/Counter-Defendants pray that this Court dismiss the First Amended Counterclaim with prejudice, or alternative, enter a judgment of no cause for action in favor of them and against Ernst, with costs and fees to be awarded as allowed by law. Further, Plaintiffs

pray that this Court ascertain and declare that these Counterclaims are frivolous within the meaning of MCR 2.625(A)(2) and MCL 600.2591 and award all costs and attorney's fees to Plaintiffs and against Ernst and his counsel, jointly and severally.

Respectfully submitted,

BROOKS WILKINS SHARKEY & TURCO PLLC

By: /s/ Keefe A. Brooks
Keefe A. Brooks (P31680)
Steve M. Ribiat (P45161)
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800
brooks@bwst-law.com
ribiat@bwst-law.com

DATED: September 3, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Keefe A. Brooks
Keefe A. Brooks (P31680)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800
brooks@bwst-law.com

STATE OF MICHIGAN
IN THE CIRCUIT COURT OF WAYNE COUNTY

Ernst & Marko Law, PLC,
and Jonathan Marko,

Plaintiffs/Counter Defendants,

v.

Kevin Ernst,

Defendant/Counter Plaintiff.

Case No. 19-008709-CB

Hon. Brian Sullivan

Keefe A. Brooks (P31680)
Brooks Wilkins Sharkey & Turco, PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
248-971-1800
brooks@bwst-law.com
Attorney for Plaintiffs/Counter Defendants

Anthony L. DeLuca (P64874)
Anthony L. DeLuca, P.L.C.
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, Michigan 48230
(313) 821-5905
anthony@aldplc.com
Attorney for Defendant/Counter Plaintiff

Eugene H. Boyle (P42023)
E.H. Boyle, P.C.
14950 East Jefferson Avenue, Suite 200
Grosse Pointe Park, MI 48230
(313) 344-4000
gene@ehboyle.com
Co-Counsel for Defendant/Counter Plaintiff

**FIRST AMENDED COUNTER COMPLAINT**

Kevin Ernst, through counsel, states as follows for his First Amended Counter Complaint against Counter Defendants Jonathan Marko and Ernst & Marko, PLC:

Document received by the MI Wayne 3rd Circuit Court.

INTRODUCTION

1. On June 24, 2019, Counter Defendant Jonathan Marko ("Marko") improperly filed this lawsuit purportedly on his own behalf, and without authority to do so on behalf of Ernst & Marko Law, PLC, a law firm (the "Firm").

2. Marko never called for a vote, obtained a consent decree from Ernst authorizing the Firm to file a law suit against him, or otherwise complied with the requirements of MCL 450.4510 before commencing an action in the name of the Firm. Therefore, the Complaint is improper. Ernst has filed a motion to dismiss Counter Defendants' Complaint.

3. Marko not only filed suit on behalf of the Firm without the authority to do so, but also used the improperly filed law suit to surreptitiously obtain an ex-parte "status quo order" which enabled him to remain on the Firm's premises so he could actively compete with the Firm, divert of attempt to divert Firm funds, and otherwise usurp Firm opportunities though a new law firm he formed on May 1, 2019, called Marko Law, PLLC. His actions are patent breaches of the fiduciary duties he owes the Firm as a member manager pursuant to MCL § 450.4404.

4. These blatant and egregious acts, along with others described in the paragraphs of this Counter Complaint, are illegal and fraudulent and constitute willfully unfair and oppressive conduct toward the Firm and Ernst.

5. Jurisdiction and venue are proper in this Court because this is a claim to remove a member from a professional limited liability company located in Wayne County pursuant to MCL 450.4515. In addition, the damages sought in this Counter Claim exceed $25,000.

Document received by the MI Wayne 3rd Circuit Court.

6. Ernst and Marko are each members of the Firm.

7. The Articles of Organization for the Firm were filed on December 14, 2015

8. There is no written operating agreement for the Firm.

9. Instead, the parties operated the Firm under an oral operating agreement.

10. Ernst owns fifty percent (50%) of the Firm and Marko owns fifty percent (50%) of the membership interest in the Firm.

11. The Firm is member managed by Ernst and Marko.

THE PARTIES & FACTUAL ALLEGATIONS

12. Ernst graduated from Wayne State University Law School in 1990 with honors.

13. For the next six years Ernst practiced under Hugh "Buck" Davis, who is recognized as one of the most prominent and well respected civil rights attorneys in America.

14. In 1996, Ernst formed his own law firm, the Ernst Law Firm, PLC, and opened an office in the Penobscot Building, 646 Griswold, Suite 4100, Detroit, MI 48226. This is the same office that the Firm operates out of today as a subtenant of the Ernst Law Firm, PLC.

15. Ernst is a phenomenal lawyer and has had a very successful career. He is well respected by fellow practitioners and numerous judges.

16. Ernst's impressive resume is replete with multimillion dollar jury verdicts, including the largest police brutality verdict in the State of Michigan, which was also the largest jury verdict of any kind in the State of Michigan that year; a whopping $36.6 million dollars.

17. Other outstanding verdicts obtained by Ernst include a $2.5 million dollar police

Document received by the MI Wayne 3rd Circuit Court.

misconduct verdict and a $1.25 million verdict in an employment discrimination case. The employment discrimination verdict was the highest employment discrimination verdict in the State of Michigan in 2014.

18. Ernst also obtained a judgment in excess of $1.1 million in another police misconduct case, a $2.9 million dollar settlement in a construction site accident case, a $1.65 million dollar settlement in a work-related injury case, and many other settlements in the high six-figure range.

19. Throughout his career, Ernst has obtained verdicts and settlements, which combined, exceed $50 million dollars.

20. Marko graduated law school in 2009 from American University.

21. By the time Marko graduated from law school, Ernst had already been practicing law for almost 20 years, had established a successful law practice, and had made a name for himself as a prominent civil rights attorney.

22. After law school, Marko initially clerked for the Michigan Supreme Court.

23. Eventually, Marko was able to obtain employment with two local personal injury lawyers., but he did not last very long with either of them.

24. First, Marko worked for attorney Geoffrey Feiger for one year.

25. Marko then took a job with the Rasor Law Firm and worked there for four years.

26. In December 2015, Marko approached Ernst and explained that he was leaving

Document received by the MI Wayne 3rd Circuit Court.

the Rasor Law Firm and that he had nowhere to go.

27. Ernst knew of Marko through a friend and colleague, Dean Elliott, an attorney who rented office space from the Rasor Law Firm.

28. Marko lied to Ernst about his qualifications as an attorney and about the reasons he was leaving the Rasor Law Firm and asked Ernst if he would consider becoming law partners with him.

29. At that time, Ernst had no idea Marko was nothing more than a modern day Trojan horse and he made a decision he would later regret.

30. Ernst took Marko into his already established law practice and formed the Firm with him in December 2015.

31. Ernst also agreed to represent Marko in exchange for reasonable compensation in a lawsuit Marko wanted to file against the Rasor Law Firm for what Marko claimed were unpaid fees that the Rasor Law Firm owed him.

32. However, Marko did not accurately disclose all of the facts or circumstances concerning his departure from the Rasor Law Firm.

33. In response to the complaint Ernst filed on behalf of Marko, the Rasor Law Firm filed a counterclaim against Marko containing allegations that ominously foreshadowed the problems Ernst himself would ultimately have with Marko in the future, including fraud, breach of fiduciary duty, and conversion. The Rasor Law Firm also filed an amended complaint alleging tortious interference claims. The Rasor Law Firm sought millions of dollars in

Document received by the MI Wayne 3rd Circuit Court.

damages from Marko.

34. According to the Rasor Law Firm's counterclaim, during his tenure as an associate attorney with Rasor Law Firm: (a) Marko failed to properly represent Rasor Law Firm clients, resulting in, among other things, the Rasor Law Firm being sanctioned in one case and the inability to call an expert witness at trial in another case; (b) Marko advertised himself individually without referencing his association with the Rasor Law Firm; (c) in an attempt to promote himself, Marko disseminated false publicity about himself and Rasor Law Firm matters; (d) Marko referred legal matters to attorneys outside of the Rasor Law Firm when, in fact, said referrals were done on behalf of the Rasor Law Firm; (e) Marko abused Rasor Law Firm staff; (f) Marko directed staff to falsify a date on at least one proof of service; (g) Marko performed services for Rasor Law Firm clients while under the influence of alcohol; and (h) Marko came into the Rasor Law Firm at 3:00 a.m., took property and files that did not belong to him, and emailed his resignation after improperly contacting Rasor Law Firm clients.

35. Marko's substance abuse issues continued after he left his job with the Rasor Law Firm.

36. At one of Dean Elliott's annual year end parties, Marko became so intoxicated that he literally fell into the fireplace at Mr. Elliott's house.

37. And, On July 2, 2017, at 1:37 a.m., Ernst received a frantic Facebook message from Marko's mother, stating that Marko had been arrested. Ernst was asleep and did not see the message that night.

Document received by the MI Wayne 3rd Circuit Court.

38. The following morning, Ernst received another message, this time from Marko's girlfriend, stating: "Kevin – call me. Jon is in jail."

39. Ernst learned from Marko's girlfriend that Marko had been arrested for disorderly conduct at his own house during a party and that he was in jail in Royal Oak.

40. Ernst called the jail and was told that Marko would be released shortly.

41. Ernst went to the Royal Oak jail around noon the following day because the police were still holding Marko in jail.

42. Ernst could see that Marko was still clearly visibly intoxicated.

43. Because Marko refused to submit to a preliminary breath test and because of his intoxicated condition, he was held in his jail cell for several more hours.

44. During the first year of the Firm's inception, Ernst prosecuted Marko's claims against the Rasor Law Firm and also defended the claims the Rasor Law Firm brought against Marko while also working full time on the case in which he ultimately won the $36.6 million dollar jury verdict in *Jennings v Fuller*.

45. Ernst also did all of the heavy lifting in the myriad of attorney lien battles between the Rasor Law Firm and the Firm, which were more of the baggage Marko brought to the Firm.

46. In addition, Ernst oversaw and worked on the cases the Firm's associates were handling, including the drafting of responses to dispositive motions in nearly every civil rights case.



Document received by the MI Wayne 3rd Circuit Court.

47. Ernst had been working on the *Jennings* case since November of 2012, over three years before he formed the Firm with Marko.

48. Marko did not work on the *Jennings* case and cannot legitimately claim to have contributed whatsoever to the jury trial that ultimately obtained the $36.6 million dollar verdict in that case.

49. The *Jennings* jury reached the verdict in September 2016.

50. Following numerous post trial motions, the parties in that case ultimately reached a confidential settlement amount.

51. Despite the fact that Marko did not work on the case, and despite the fact that Ernst had been working on the case for three years before he and Marko formed the Firm, and although Ernst obtained the verdict just nine months after he and Marko formed the Firm, Ernst split the roughly $2 million dollar attorney fee he received from that case, giving Marko just under $1 million dollars from a case he had nothing to do with, based on Marko's assurances that he would continue to act in good faith toward Ernst and not breach his fiduciary duties to Ernst or the Firm.

52. Since the inception of the Firm, Marko has not obtained any verdicts or settlements that have garnered anywhere near as much money for the Firm.

53. In fact, Marko created more problems than anything else for the Firm. He was a detriment to the Firm, not an asset.

54. Throughout his entire career, spanning roughly three decades, Ernst has never



Document received by the MI Wayne 3rd Circuit Court.

been sued for legal malpractice.

55. Yet, in the mere four years that the Firm has been in existence, Marko - and by association the Firm - have been sued twice for malpractice that Marko committed.

56. As a result of the numerous malpractice lawsuits filed against Marko, the Firm's malpractice carrier dropped the Firm.

57. As a further result of the malpractice lawsuits filed against Marko, Ernst had to devote hundreds of hours defending one of the malpractice cases, and in one of the cases the Firm had to pay roughly $90,000 out of pocket to settle the case, along with thousands of dollars in additional attorney fees to a third party.

58. Upon information and belief, Marko not only failed his clients by committing legal malpractice, but also engaged in unethical fraudulent conduct with the Firm's clients, including the falsification of copying costs as an expense charged to a client for which he had obtained a settlement.

59. Marco's reckless and unlawful egregious actions have exposed the Firm to significant liability and jeopardize the future of the Firm.

60. While Ernst was on vacation in Hawaii, on May 1, 2019, Marko formed his new competing law firm, Marko Law, PLLC.

61. Marko Law, PLLC, is solely owned by Marko and directly competes with the Firm.

62. Despite having no right to occupy the Firm's premises, Marko officially listed the



Document received by the MI Wayne 3rd Circuit Court.

Firm's address as the registered address of his new competing law firm, Marko Law, PLLC, on the Articles of Organization he filed with the State of Michigan.

63. Marko even listed the Firm's phone number, a number that Ernst has used since he first opened his own law practice roughly 25 years ago, as the telephone number for Marko Law, PLLC.

64. Marko has not only attempted to take over the Firm's premises and its infrastructure for the benefit of his new competing law firm, but has also attempted to solicit all of the Firm's staff to leave the Firm and his new competing law firm.

65. Marko also directed a Firm associate, Ali Charara, to delay signing up new clients to the Firm until Marko could officially sign up the new clients to his new competing law firm, because Marko believed that Mr. Charara and all of the other Firm associates would leave the Firm and join his new competing law firm.

66. However, Marko's attempted coup totally backfired.

67. Marko was unable to convince all but one Firm employee, Amanda Fresard, to leave the Firm and join his new competing law firm.

68. All of the other employees, including the Firm's three associates, have remained loyal to Ernst and the Firm and have completely rejected Marko.

69. Nevertheless, to date, Marko still occupies the Firm's premises where he continues to operate Marko Law, PLLC, and actively compete with the Firm.

70. Marko routinely berates and argues with the Firm's staff.



Document received by the MI Wayne 3rd Circuit Court.

71. Marko's continued presence is insufferable.

72. After forming Marko Law, PLLC, Marko used the Firm's resources, including the Firm's website and the Firm's referral sources, to usurp potential Firm clients for his new competing law firm.

73. Behind Ernst's back, Marko sent misleading encrypted emails to various Firm clients, so the emails could not be traced or seen by Ernst. In those emails, Marko falsely claimed that he had been the primary attorney on the cases, when it fact he had not worked on the cases at all.

74. Marko, or someone at his direction, has also contacted existing Firm clients and encouraged them to terminate their relationship with the Firm and to hire his new competing law firm.

75. Upon information and belief, Marko has made derogatory statements about Ernst to Firm clients, or has encouraged others to make derogatory statements about Ernst to Firm clients, to induce the Firm's clients to terminate their relationship with the Firm and to hire his new competing law firm.

76. As a result of Marko's conduct, many Firm clients have terminated their relationship with the Firm and hired Marko's new competing law firm.

77. On June 21, 2019, Marko created a website for his new firm at www.jmarkolaw.com.

78. In total violation of the rules of professional conduct, Marko fraudulently



Document received by the MI Wayne 3rd Circuit Court.

advertised Ernst's jury verdicts and settlements on www.jmarkolaw.com as his own, including the $36.6 million dollar verdict Ernst obtained, despite having nothing to do with that verdict or any of the other verdicts or settlements.

79. In fact, Ernst obtained many of the verdicts and settlements Marko falsely advertised as his own before Marko even became an attorney.

80. On several occasions, Marko diverted or attempted to divert Firm funds by contacting third parties that owe money to the Firm and instructing them to send the funds to his new firm at clandestine addresses, including a P.O. Box in the Renaissance Center and an address at a building in St. Clair Shores.

81. Marko has also begun looting the Firm's assets since he formed his new competing law firm by making excessive charges on his Firm's credit card, and otherwise using Firm funds to pay for his new competing law firm's expenses.

82. Marko also unilaterally added a disbarred attorney to the Firm's payroll account and has instructed and encouraged that individual to conduct potential client interviews for his new competing law firm, in blatant violation of rules of professional conduct, and at the sole expense of the Firm.

83. Upon information and belief, Marko has also undercut the Firm's ability to collect attorney fees on certain cases referred to the Firm by his friends, by purportedly entering into secret referral fee agreements.

84. A law firm called Hadad & Hadad referred a PIP and auto negligence case, *Kaur*

Document received by the MI Wayne 3rd Circuit Court.

*v Yerukola*, to the Firm, which was already underway and set for trial in early 2019.

85. Ernst did a considerable amount of work with Marko preparing for the trial, since the case had not been properly handled before the Firm took it over.

86. In January 2019, the Firm settled the auto negligence case for $1.1 million dollars. The attorney fees were in excess of $350,000.

87. However, unbeknownst to Ernst, Marko had purportedly made a deal with his friends at Hadad & Hadad for the Firm to accept a paltry $80,000 as its share of the attorney fee.

88. The Firm's share of the fee should have been 2/3 of the fee, with the other 1/3 of the fee paid to the referring attorneys.

89. Thus, Marko unilaterally reduced what should have been a $234,000 fee to an $80,000 fee.

90. When Ernst learned about this and told Marko that he did not agree with that arrangement, Marko replied that it was too late and that he had already agreed to it in writing.

91. Upon information and belief, Hadad & Hadad later gave Marko an additional portion of the fee, possibly through another secret company formed by Marko.

92. That entity is called Ballers and Associates, PLLC.

93. Marko formed Ballers and Associated, PLLC, on March 8, 2013.

94. Marko has kept the entity in good standing ever since.

95. Upon information and belief, Marko has used Ballers and Associates, PLLC, to



Document received by the MI Wayne 3rd Circuit Court.

divert funds that belong to the Firm.

**COUNT I**

**DECLARATION THAT MARKO'S ACTIONS ARE ILLEGAL, FRAUDULENT, AND CONSTITUTE WILLFULLY UNFAIR OPPRESSIVE CONDUCT**

96. Counter Plaintiff Kevin Ernst incorporates all previous paragraphs.

97. Marko is a member manager of the Firm.

98. His actions, as describe herein, constitute illegal, fraudulent and willfully unfair oppressive conduct.

99. Marko's illegal, fraudulent, and willfully unfair oppressive conduct specifically includes the conduct mentioned in previous paragraphs of this Counter Complaint, but is not limited to: (a) forming a new competing law firm on May 1, 2019; (b) using that new firm to directly compete with the Firm before and after he improperly brought an action on behalf of the Firm against Ernst, and surreptitiously obtained an improper order permitting him to remain on the Firm's premises and compete with the Firm; (c) operating the new competing law firm out of the Firm's location; (d) usurping potential Firm clients for his new competing law firm through the Firm's website and other Firm referral sources; (e) interfering with and causing the termination of client relationships with the Firm; (f) diverting or attempting to divert Firm funds and receivables, including structured settlement payments and other settlement proceeds that belong to the Firm; (g) subjecting the Firm to numerous malpractice claims and grievances, some of which have already resulted in the Firm losing its malpractice carrier and the Firm having to pay substantial amounts out of pocket to defend and ultimately settle the claims; (h) setting up a

Document received by the MI Wayne 3rd Circuit Court.

website for his new competing law firm on which he fraudulently advertised Ernst's jury verdicts and settlements as his own; (i) draining Firm resources through excessive use of his Firm credit card; (j) exposing the Firm to additional liability by unilaterally adding a disbarred attorney to the Firm's payroll who, at his direction, violates the rules of professional conduct by performing potential client interviews; (k) using Firm funds to pay his attorney who improperly brought this lawsuit (l) using Firm funds for other expenses that benefit his new competing law firm; and (l) using the Firm's resources to prosecute and defend his claims against the Rasor Law Firm and charging the expenses for that lawsuit to the Firm.

100. Because of Marko's illegal, fraudulent and willfully unfair oppressive conduct the Firm and Ernst have suffered significant damages.

101. Marko's illegal, fraudulent and willfully unfair oppressive conduct requires immediate removal of Marko as a member of the Firm.

## COUNT II

## BREACH OF FIDUCIARY DUTIES

102. Counter Plaintiff Kevin Ernst incorporates all previous paragraphs.

103. As a member manager of the Firm, Marko owes fiduciary duties of the highest level to act in good faith and promote the interests of the limited liability company, including, but not necessarily limited to, the duty of loyalty and the duty of care.

104. Pursuant to MCL § 450.4404, a manager shall discharge the duties of manager in good faith, with the care an ordinarily prudent person in a like position would exercise under



Document received by the MI Wayne 3rd Circuit Court.

similar circumstances, and in a manner the manager reasonably believes to be in the best interests of the limited liability company.

105. As explained in previous paragraphs, Marko did not discharge his duties in good faith, with the care that an ordinarily prudent person in a like position would exercise under similar circumstances, or in a manner he reasonably believed to be in the best interests of the Firm.

106. Marko has committed multiple breaches of his fiduciary duties as stated in previous paragraphs, by, among other things, forming a new competing law firm that is actively competing with the Firm, encouraging the Firm's employees to leave the Firm and join his new competing law firm, usurping opportunities of the Firm for his new competing law firm, diverting, misappropriating or attempting to divert and misappropriate Firm assets, wasting Firm assets, interfering with client relations with the Firm, and encouraging Firm clients to terminate their relationship with the Firm, all while taking full advantage of the Firm's pre-existing infrastructure and its resources, and using those resources to facilitate the multiple breaches of his fiduciary duties.

107. The Firm and Ernst have suffered damages as a result of Marko's utter disregard for his fiduciary duties.

**COUNT III**

**BREACH OF CONTRACT**

108. Counter Plaintiff Kevin Ernst repeats the allegations above as if set forth herein.

109. Marko had no right to automatically receive one half of the attorney fee Ernst



Document received by the MI Wayne 3rd Circuit Court.

received from the *Jennings* matter.

110. Ernst gave Marko one half of the fee he received from the *Jennings* matter in exchange for Marko's express or implied promise that he would respect, adhere to, and otherwise comply and abide by the fiduciary duties he owed the Firm as a member manager of the Firm, so long as he remained a member of the Firm.

111. Ernst gave Marko one half of the fee he received from the *Jennings* matter in exchange for Marko's express or implied promise that he would not engage in the conduct described herein so long as he was a member of the Firm.

112. Marko's conduct described above breached his express or implied agreement with Ernst.

113. As a result, Ernst has suffered damages and is entitled to the return of the funds he paid to Marko from the *Jennings* matter.

**COUNT IV**

**UNJUST ENRICHMENT**

114. Counter Plaintiff Kevin Ernst repeats the allegations above as if set forth herein.

115. Alternatively, by retaining one half of the attorney fee Ernst obtained in the *Jennings* case, Marko has been unjustly enriched by nearly $1 million dollars.

116. Marko received a benefit from Ernst when he received 50% of the *Jennings* fee.

117. Given the circumstances, it would be an absolute inequity for Marko to be entitled to retain the nearly $1 million dollars Ernst paid him out of the attorney fee awarded to Ernst

Document received by the MI Wayne 3rd Circuit Court.

from the *Jennings* case.

118. Marko should he required to return the nearly $1 million dollars Ernst paid him out of the attorney fee Ernst received from the *Jennings* case.

WHEREFORE, Counter Plaintiff Kevin Ernst respectfully requests:

(A) That the Court enter an order declaring Marko's conduct to be in violation of the fiduciary duties he owes as a member manager of the Firm;

(B) That the Court enter an order removing Marko as a member of the Firm;

(C) That the Court enter an order removing Marko from the Firm's offices;

(D) That the Court enter an order prohibiting Marko from engaging in any further illegal, fraudulent, or willfully oppressive conduct;

(E) That the Court enter an award of appropriate compensatory damages against Marko with pre and post judgment interest;

(F) That the Court enter an award of appropriate exemplary damages against Marko;

(G) That the Court enter an order requiring Marko to return the nearly $1 million dollars Ernst paid him from the attorney fee Ernst received in the *Jennings* case;

(H) That the Court dismiss the improper claims wrongfully brought by the Firm and Marko against Ernst;

(I) That the Court order Marko to provide an accounting of the money he has diverted from the Firm;

(J) That the Court order Marko to provide a list of all of the client's he has diverted from the Firm;

Document received by the MI Wayne 3rd Circuit Court.

(K) That the Court award Ernst his costs and attorney fees; and

(L) That the Court grant any such further relief as it may deem just and proper.

Respectfully submitted,

Anthony L. DeLuca, P.L.C.

/s/ Anthony L. DeLuca
Anthony DeLuca (P-64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905
anthony@aldplc.com

E.H. Boyle, P.C.

/s/ Eugene H. Boyle
Eugene H. Boyle (P42023)
14950 East Jefferson Avenue, Suite 200
Grosse Pointe Park, MI 48230
(313) 344-4000
gene@ehboyle.com

DATED: August 23, 2019

Attorneys for Counter Plaintiff Kevin Ernst

CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon all counsel of record through the Court's electronic filing system on contemporaneously with the filing of the document.

*/s/ Anthony DeLuca*
Anthony DeLuca

Document received by the MI Wayne 3rd Circuit Court.

STATE OF MICHIGAN
IN THE CIRCUIT COURT OF WAYNE COUNTY

Ernst & Marko Law, PLC,
and Jonathan Marko,

Plaintiffs/Counter Defendants,

v.

Kevin Ernst,

Defendant/Counter Plaintiff.

Case No. 19-008709-CB

Hon. Brian Sullivan

Keefe A. Brooks (P31680)
Brooks Wilkins Sharkey & Turco, PLLC
401 S. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
248-971-1800
brooks@bwst-law.com
Attorney for Plaintiffs/Counter Defendants

Anthony L. DeLuca (P64874)
Anthony L. DeLuca, P.L.C.
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, Michigan 48230
(313) 821-5905
anthony@aldplc.com
Attorney for Defendant/Counter Plaintiff

Eugene H. Boyle (P42023)
E.H. Boyle, P.C.
14950 East Jefferson Avenue, Suite 200
Grosse Pointe Park, MI 48230
(313) 344-4000
gene@ehboyle.com
Co-Counsel for Defendant/Counter Plaintiff

**COUNTER COMPLAINT**

Kevin Ernst, through counsel, states as follows for his counter complaint against Counter Defendants Jonathan Marko and Ernst & Marko, PLC:

Document received by the MI Wayne 3rd Circuit Court.

INTRODUCTION

1. On June 24, 2019, Counter Defendant Jonathan Marko ("Marko") improperly filed this lawsuit purportedly on his own behalf, and without authority to do so on behalf of Ernst & Marko Law, PLC, a law firm (the "Firm") in which he and Counter Plaintiff Kevin Ernst ("Ernst") each own an equal interest one half interest.

2. Marko never called for a vote, obtained a consent decree from Ernst authorizing the Firm to file a law suit against him, or otherwise complied with the requirements of MCL 450.4510 before commencing an action in the name of the Firm. Therefore, the Complaint is improper. Ernst has filed a motion to dismiss Counter Defendants' Complaint contemporaneously with the filing of this Counter Complaint.

3. Marko not only filed suit on behalf of the Firm without the authority to do so, but also used the improperly filed law suit to surreptitiously obtain an ex-parte "status quo order" which enabled him to remain on the Firm's premises so he could actively compete with the Firm, attempt to divert Firm funds, and otherwise usurp Firm opportunities though a new law firm he formed on May 1, 2019, called Marko Law, PLLC. His actions are patent breaches of the fiduciary duties he owes the Firm as a member manager pursuant to MCL § 450.4404.

4. These blatant and egregious acts, along with others described in the paragraphs below, are illegal and fraudulent and constitute willfully unfair and oppressive conduct toward the Firm and Ernst.

5. Jurisdiction and venue are proper in this Court because this is a claim to remove a

Document received by the MI Wayne 3rd Circuit Court.

member from a professional limited liability company located in Wayne County pursuant to MCL 450.4515. In addition, the damages sought in this Counter Claim exceed $25,000.

6. Ernst and Marko are each members of the Firm.

7. The Articles of Organization for the Firm were filed on December 14, 2015

8. There is no written operating agreement for the Firm.

9. Instead, the parties operated the Firm under an oral operating agreement.

10. Ernst owns fifty percent (50%) of the Firm and Marko owns fifty percent (50%) of the membership interest in the Firm and each are entitled to an equal division of the Firm's NET profits.

11. The Firm is member managed by Ernst and Marko.

THE PARTIES

12. Ernst graduated from Wayne State University Law School in 1990 with honors.

13. For the next six years Ernst practiced under Hugh "Buck" Davis, who is recognized as one of the most prominent and well respected civil rights attorneys in America.

14. In 1996, Ernst formed his own law firm, and opened an office in the Penobscot Building, 646 Griswold, Suite 4100, Detroit, MI 48226. This is the same office that the Firm operates out of today as a subtenant of Ernst.

15. Ernst is a phenomenal lawyer and has had a very successful career. He is well respected by fellow practitioners and numerous judges.

16. Ernst's impressive resume is replete with multimillion dollar jury verdicts,

Document received by the MI Wayne 3rd Circuit Court.

including the largest police brutality verdict in the State of Michigan, which was also the largest jury verdict of any kind in the State of Michigan that year; a whopping $36.6 million dollars.

17. Other outstanding verdicts obtained by Ernst include a $2.5 million dollar police misconduct verdict and a $1.25 million verdict in an employment discrimination case. The employment discrimination verdict was the highest employment discrimination verdict in the State of Michigan in 2014.

18. Ernst also obtained a judgment in excess of $1.1 million in another police misconduct case, a $2.9 million dollar settlement in a construction site accident case, a $1.65 million dollar settlement in a work-related injury case, and many other settlements in the high six-figure range.

19. Throughout his career, Ernst has obtained verdicts and settlements, which combined, exceed $50 million dollars.

20. Marko graduated law school in 2009 from American University.

21. By the time Marko graduated from law school, Ernst had been practicing law for almost 20 years, had established a successful law practice, and had made a name for himself as a prominent civil rights attorney.

22. After law school, Marko initially clerked for the Michigan Supreme Court.

23. Eventually, Marko was able to obtain employment with two local personal injury lawyers. He did not last very long with either of them.

24. First, Marko worked for attorney Geoffrey Feiger for one year.

Document received by the MI Wayne 3rd Circuit Court.

25. Marko then took a job with the Rasor Law Firm and worked there for four years.

26. In December 2015, Marko approached Ernst and explained that he was leaving the Rasor Law Firm and that he had nowhere to go.

27. Ernst knew of Marko through a friend and colleague, Dean Elliott, an attorney who rented office space from the Rasor Law Firm.

28. Marko lied to Ernst about his qualifications as an attorney and about the reasons he was leaving the Rasor Law Firm and asked Ernst if he would consider becoming law partners with him.

29. At the time, Ernst had no idea Marko was nothing more than a modern day Trojan horse and he made a decision he would later regret.

30. Ernst took Marko in to his already established law practice and formed the Firm with him in December 2015.

31. Ernst also agreed to represent Marko in exchange for reasonable compensation in a lawsuit Marko wanted to file against the Rasor Law Firm for what Marko claimed were unpaid fees that the Rasor Law Firm owed him.

32. However, Marko did not accurately disclose all of the facts or circumstances concerning his departure from the Rasor Law Firm.

33. In response to the complaint Ernst filed on behalf of Marko, the Rasor Law Firm filed a counterclaim against Marko containing allegations that ominously foreshadowed the problems Ernst himself would ultimately have with Marko in the future, including fraud, breach

Document received by the MI Wayne 3rd Circuit Court.

of fiduciary duty, and conversion. The Rasor Law Firm also filed an amended complaint alleging tortious interference claims. The Rasor Law Firm sought millions of dollars in damages from Marko.

34. According to the counterclaim, during his tenure as an associate attorney with Rasor Law Firm: (a) Marko failed to properly represent Rasor Law Firm clients, resulting in, among other things, the Rasor Law Firm being sanctioned in one case and the inability to call an expert witness at trial in another case; (b) Marko advertised himself individually without referencing his association with the Rasor Law Firm; (c) in an attempt to promote himself, Marko disseminated false publicity about himself and Rasor Law Firm matters; (d) Marko refered legal matters to attorneys outside Rasor Law Firm when, in fact, said referrals were done on behalf of the Rasor Law Firm; (e) Marko abused Rasor Law Firm staff; (f) Marko directed staff to falsify a date on at least one proof of service; and (g) Marko performed services for Rasor Law Firm clients while under the influence of alcohol, and Marko came into the Rasor Firm at 3:00 a.m. and took property and files that did not belong to him and emailed his resignation after improperly contacting Rasor's clients.

35. Marko's substance abuse issues did not cease after he quit his job with the Rasor Law Firm.

36. At one of Dean Elliott's annual year end parties, Marko became so intoxicated that he literally fell into the fireplace at Mr. Elliott's house.

37. And, On July 2, 2017, at 1:37 a.m., Ernst received a frantic Facebook notification from Marko's mother, informing him that Marko had been arrested. Ernst was asleep and did



Document received by the MI Wayne 3rd Circuit Court.

not see the message that night. The following morning, Ernst received another Facebook message from Marko's girlfriend, stating: "Kevin – call me. Jon is in jail." Ernst learned from Marko's girlfriend that Marko was arrested for disorderly conduct at his own house during a party and that he was in jail in Royal Oak. Ernst called the jail and was told Marko would be released shortly. Ernst went to the Royal Oak jail around noon the following day because the police were still holding Marko in jail. Ernst could see that Marko was still clearly intoxicated. When Ernst asked why Marko was still in jail, he was told that Marko was refusing to submit to a preliminary breath test ("PBT"), and that given his current condition, he would have to remain in his jail cell for several more hours. Marko was eventually released later that day after he sobered up.

38. During the first year of the Firm's inception, Ernst prosecuted Marko's claims against Rasor and defended the claims the Rasor Law Firm brought against Marko while also working full time on the case in which he ultimately won the $36.6 million dollar jury verdict in Jennings v. Fuller, et al.

39. Ernst also did all of the heavy lifting in the myriad of attorney lien battles between the Rasor Law Firm and the Firm, which were more of the baggage Marko brought to the Firm.

40. In addition, Ernst oversaw and worked on the cases the Firm's associates were handling, including the drafting of responses to dispositive motions in nearly every civil rights case.

41. Ernst had been working on the Jennings case since November of 2012, over three



Document received by the MI Wayne 3rd Circuit Court.

years before he formed the Firm with Marko. Marko did not work on the case and cannot legitimately claim to have contributed whatsoever to the jury trial that ultimately obtained the $36.6 million dollar verdict.

42. The jury reached the verdict in September 2016. Following numerous post trial motions, the parties in that case ultimately reached a confidential settlement amount.

43. Despite the fact that Marko did not work on the case, and despite the fact that Ernst had been working on the case for three years before he and Marko formed the Firm, and although Ernst obtained the verdict just nine months after he and Marko formed the Firm, Ernst split the roughly $2 million dollar attorney fee he received from that case, giving Marko just under $1 million dollars from a case he had nothing to do with, based on Marko's assurances that he would continue to act in good faith toward Ernst and not breach his fiduciary duties to Ernst or the Firm.

44. Since the inception of the Firm, Marko has not obtained any verdicts or settlements that have garnered anywhere near as much money for the Firm.

45. In fact, Marko created more problems than anything else for the Firm. He was a detriment to the Firm, not an asset.

46. Throughout his entire career, spanning roughly three decades, Ernst has never been sued for legal malpractice.

47. Yet, in the mere four years that the Firm has been in existence, Marko - and by association the Firm - have been sued twice for malpractice that Marko committed.

Document received by the MI Wayne 3rd Circuit Court.

48. As a result of the numerous malpractice lawsuits filed against Marko, the Firm's malpractice carrier dropped the Firm, Ernst had to devote hundreds of hours defending one of the malpractice cases against Marko, and in one of the cases the Firm had to pay roughly $90,000 out of pocket to settle the case, along with thousands of dollars in additional attorney fees to a third party.

49. Upon information and belief, Marko not only failed his clients by committing legal malpractice, but also engaged in unethical fraudulent conduct with his clients, including the falsification of copying costs as an expense charged to a client for which he had obtained a settlement.

50. Marco's reckless and unlawful egregious actions have exposed the Firm to significant liability and jeopardize the future of the Firm.

51. While Ernst was on vacation in Hawaii, on May 1, 2019, Marko formed his new competing law firm, Marko Law, PLLC.

52. Marko Law, PLLC, is solely owned by Marko and directly competes with the Firm.

53. Despite having no right to occupy the Firm's premises, Marko officially listed the Firm's address as the registered address of his new competing law firm, Marko Law, PLLC, on the Articles of Organization he filed with the State of Michigan.

54. Until very recently, Marko had listed the Firm's phone number, a number that Ernst has used since he first opened his own law practice roughly 25 years ago, as the telephone

Document received by the MI Wayne 3rd Circuit Court.

number for Marko Law, PLLC.

55. Marko has not only attempted to take over the Firm's premises and its infrastructure for the benefit of his new competing law firm, but has also attempted to solicit all of the Firm's staff to leave the Firm and join Marko Law, PLLC.

56. Marko also directed a Firm associate, Ali Charara, to delay signing up new clients until Marko had officially left the Firm and could sign up the new clients to his new competing law firm because Marko believed that Charara would join his new firm.

57. However, Marko's attempted coup completely backfired. Because of his conduct and his chronic failure to get along with coworkers, Marko was unable to convince all but one Firm employee, Amanda Fresard, to leave the Firm and join his new competing law firm. All of the other employees, including the Firm's three associates, have remained loyal to Ernst and have completely rejected Marko.

58. Nevertheless, to date, Marko still occupies the Firm's premises where he continues to operate Marko Law, PLLC, and actively compete with the Firm.

59. Marko routinely berates and argues with the Firm's staff. His continued presence is insufferable.

60. After forming Marko Law, PLLC, Marko used the Firm's resources, including the Firm's website and the Firm's referral sources, to usurp potential Firm clients for his new competing law firm.

61. Behind Ernst's back, Marko sent misleading encrypted (so they could not be seen

Document received by the MI Wayne 3rd Circuit Court.

by Ernst) emails to various Firm clients, falsely claiming that he had been the primary attorney on their cases, when it fact he had not worked on the cases at all.

62. Marko, or someone at his direction, has also contacted existing Firm clients and has encouraged them to terminate their relationship with the Firm and to hire his new firm.

63. Upon information and belief, Marko has made derogatory statements about Ernst to Firm clients, or has encouraged others to make derogatory statements about Ernst to Firm clients, to induce the Firm's clients to terminate their relationship with the Firm and to hire his new competing law firm.

64. On June 21, 2019, Marko created a website for his new firm at www.jmarkolaw.com.

65. In total violation of the rules of professional conduct, Marko fraudulently advertised Ernst's jury verdicts on www.jmarkolaw.com, including the $36.6 million dollar verdict Ernst obtained, despite having nothing to do with that verdict or any of the other verdicts. In fact, Ernst obtained many of the verdicts Marko falsely advertises as his own before Marko even became an attorney.

66. On several occasions, Marko attempted to divert Firm funds by contacting third parties that owe money to the Firm and instructing them to send the funds to his new firm at clandestine addresses, including an address at a P.O. Box in the Renaissance Center and an address at a building in St. Clair Shores.

67. Marko has also begun looting the Firm's assets since he formed his new



Document received by the MI Wayne 3rd Circuit Court.

competing law firm by making excessive charges on his Firm credit card, and otherwise using Firm funds to pay for his new competing law firm's expenses, without contributing any funds to the Firm's operating expenses.

68. Marko also unilaterally added a disbarred attorney to the Firm's payroll account and instructed that individual to conduct client interviews for his new firm, in blatant violation of rules of professional conduct, and at the sole expense of the Firm, to which he contributes no money.

69. Upon information and belief, Marko has also undercut the Firm's ability to collect attorney fees on certain cases referred to the Firm by his friends, by purportedly entering into secret referral fee agreements.

70. A law firm called Hadad & Hadad referred a PIP and auto negligence case, Kaur v. Yerukola, to the Firm, which was already underway and set for trial in early 2019.

71. Ernst did a considerable amount of work with Marko preparing for the trial, since the case had not been properly handled before the Firm took it over.

72. In January 2019, the Firm settled the auto negligence case for $1.1 million dollars. The attorney fees were in excess of $350,000.

73. However, Marko had purportedly made a deal with his friends at Hadad & Hadad for the Firm to accept a paltry $80,000 as its share of the attorney fee.

74. The Firm's share of the fee would have routinely been 2/3 of the fee, with the other 1/3 of the fee paid to the referring attorneys. Thus, Marko unilaterally reduced what should

Document received by the MI Wayne 3rd Circuit Court.

have been a $234,000 fee to an $80,000 fee.

75. When Ernst learned about this and told Marko he did not agree to that arrangement, Marko replied that it was too late and that he had already agreed to it in writing.

76. Upon information and belief, Hadad & Hadad later gave Marko an additional portion of the fee, possibly through h another secret PLC formed by Marko. That entity is called Ballers and Associates, PLLC. Marko formed it on March 8, 2013. Marko has kept the entity in good standing ever since.

77. Upon information and belief, Marko has used Ballers and Associates, PLLC, to divert funds that he has a fiduciary duty to deliver to the Firm.

**COUNT I**

**DECLARATION THAT MARKO'S CONDUCT AS A MEMBER MANAGER IS ILLEGAL, FRAUDULENT, AND CONSTITUTES WILLFULLY UNFAIR OPPRESSIVE CONDUCT TOWARD THE FIRM AND ERNST**

78. Counter Plaintiff Kevin Ernst repeats the allegations above as if set forth herein.

79. Marko's actions as describe herein constitute illegal, fraudulent and willfully unfair oppressive conduct toward the Firm and towards Ernst.

80. Marko's illegal, fraudulent, and willfully unfair oppressive conduct towards the Firm and Ernst specifically includes the conduct mentioned in previous paragraphs of this counter complaint, but is not limited to: (a) forming a new competing law firm on May 1, 2019; (b) using that new firm to directly compete with the Firm before and after improperly brining an action on behalf of the Firm against Ernst, and obtaining an improper order permitting him to



Document received by the MI Wayne 3rd Circuit Court.

remain on the Firm's premises to compete with the Firm; (c) operating the new firm out of the Firm's location; (d) usurping potential Firm clients for the new firm through the Firm's website and other Firm referral sources; (e) interfering with and causing the termination of client relationships with the Firm; (f) diverting or attempting to divert Firm funds and receivables, including structured settlement payments and other settlement proceeds that belonged to the Firm; (g) subjecting the Firm to numerous malpractice claims and grievances some of which have already resulted in the Firm losing its malpractice carrier and the Firm having to pay substantial amounts out of pocket to defend and ultimately settle claims; (h) setting up a website for his new firm on which he fraudulently advertising Ernst's jury verdicts as his own; (i) draining Firm resources through excessive use of his Firm credit card; (j) exposing the Firm to additional liability by unilaterally adding a disbarred attorney to the Firm's payroll who, at his direction, violates the rules of professional conduct by performing potential client interviews; (k) using Firm funds to pay his attorney who improperly brought this lawsuit and (l) using the forms resources to prosecute and defend his claims against the Rasor Law Firm and charging the expenses for that private lawsuit to the Firm, which are well over $15,000.00.

81. Because of Marko's illegal, fraudulent and willfully unfair oppressive conduct Ernst and the Firm have suffered significant damages.

82. Marko's illegal, fraudulent and willfully unfair oppressive conduct requires immediate removal of Marko as a member of the Firm.

**COUNT II**

**BREACH OF FIDUCIARY DUTIES**



Document received by the MI Wayne 3rd Circuit Court.

83. Counter Plaintiff Kevin Ernst repeats the allegations above as if set forth herein.

84. As a member manager of the firm, Marko owes fiduciary duties of the highest level to act in good faith and promote the interests of the limited liability company, including, but not necessarily limited to, the duty of loyalty and the duty of care. Pursuant to MCL § 450.4404, a manager shall discharge the duties of manager in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner the manager reasonably believes to be in the best interests of the limited liability company.

85. As explained in previous paragraphs, Marko has committed multiple breaches of his fiduciary duties by forming a new law firm that is actively competing with the Firm, usurping opportunities of the Firm, diverting, misappropriating and attempting to divert and misappropriate Firm assets, wasting Firm assets, interfering with client relations with the Firm, and encouraging Firm clients to terminate their relationship with the Firm, all while taking full advantage of the Firm's pre-existing infrastructure and its resources, and using those resources to facilitate the multiple breaches of his fiduciary duties.

86. Ernst and the Firm have suffered damages as a result of Marko's utter disregard for his fiduciary duties.

## COUNT III

## BREACH OF CONTRACT

87. Counter Plaintiff Kevin Ernst repeats the allegations above as if set forth herein.

88. Marko had no contractual right to automatically receive one half of the attorney



Document received by the MI Wayne 3rd Circuit Court.

fee Ernst received from the Jennings matter when Ernst obtained the fee.

89. Instead, Ernst gave Marko one half of the fee he received from the Jennings matter in exchange for Marko's express or implied promise that he would respect, adhere to, and otherwise comply and abide by the fiduciary duties he owed the Firm as a member manager of the Firm, so long as he remained a member and manager of the Firm.

90. Marko's conduct described above breached his express or implied agreement with Ernst.

91. As a result, Ernst has suffered damages and is entitled to the return of the nearly $1 million dollars he paid to Marko.

**COUNT IV**

**UNJUST ENRICHMENT**

92. Counter Plaintiff Kevin Ernst repeats the allegations above as if set forth herein.

93. Alternatively, by accepting one half of the attorney fee Ernst obtained in the Jennings case, Marko has unjustly enriched by nearly $1 million dollars.

94. Marko received a benefit from Ernst when he received 50% of the Jennings fee.

95. Given the circumstances, it would be an absolute inequity for Marko to be entitled to retain the nearly $1 million dollars Ernst paid him out of the attorney fee awarded to Ernst from the Jennings case.

96. Marko should he required to return the nearly $1 million dollars Ernst paid him out of the attorney fee Ernst received from the Jennings case.

Document received by the MI Wayne 3rd Circuit Court.

WHEREFORE, Counter Plaintiff Kevin Ernst respectfully requests:

(A) That the Court enter an order declaring Marko's conduct to be in violation of the fiduciary duties he owes the Firm and Ernst;

(B) That the Court enter an order removing Marko as a member of the Firm;

(C) That the Court enter an order removing Marko from occupying the Firm's offices;

(D) That the Court enter an order prohibiting Marko from engaging in any further illegal, fraudulent, or willfully oppressive conduct;

(E) That the Court enter an award of appropriate damages against Marko and in favor of Ernst sufficient to compensate Ernst with pre and post judgment interest;

(F) That the Court enter an order requiring Marko to return the nearly $1 million dollars Ernst paid him from the attorney fee Ernst received in the Jennings case;

(G) That the Court dismiss the improper claim wrongfully brought by the Firm and Marko against Ernst;

(H) That the Court order Marko to provide an accounting of the money he has diverted from the Firm;

(I) That the Court award Ernst his costs and attorney fees; and

(J) That the Court grant any such further relief as it may deem just and proper.

Document received by the MI Wayne 3rd Circuit Court.

Respectfully submitted,

Anthony L. DeLuca, P.L.C.

/s/ Anthony L. DeLuca
Anthony DeLuca (P-64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905
anthony@aldplc.com

E.H. Boyle, P.C.

/s/ Eugene H. Boyle
Eugene H. Boyle (P42023)
14950 East Jefferson Avenue, Suite 200
Grosse Pointe Park, MI 48230
(313) 344-4000
gene@ehboyle.com

DATED: August 21, 2019

Attorneys for Counter Plaintiff Kevin Ernst

PROOF OF SERVICE

I certify that the foregoing document was served upon all counsel of record through the Court's electronic filing system on contemporaneously with the filing of the document.

/s/ *Anthony DeLuca*
Anthony DeLuca



Document received by the MI Wayne 3rd Circuit Court.

19-008709-CB FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 6/24/2019 9:25 AM Carlita McMiller

| STATE OF MICHIGAN<br>3rd JUDICIAL CIRCUIT<br>COUNTY OF WAYNE | VERIFICATION OF<br>BUSINESS COURT ELIGIBILITY<br>AND NOTICE OF ASSIGNMENT | CASE NO.<br>2019- -CB |
|---|---|---|

Court address: 2 Woodward Ave., Detroit, MI 48226

| Plaintiff(s) | | Defendant(s) |
|---|---|---|
| Ernst & Marko Law, PLC and<br>Jonathan R. Marko | v | Kevin S. Ernst |

I am the attorney for the [check one] ☑ plaintiff ☐ defendant and per *MCR 2.114(B)(2) and MCR 2.114(D)* declare to the best of my information, knowledge, and belief that this case meets the statutory requirements to be assigned to the business court, *MCR 2.112(O),MCL 600.8031 et seq.*, and request assignment to the Business Court for the following reasons:

[***Both Sections 1 and 2 must be completed to be accepted by the Court (check all that apply)***]

1. **Parties**. This is a qualifying business or commercial dispute as defined by *MCL 600.8031(1)(c)* because,

- ☐ all of the parties are business enterprises
- ☑ one or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members, directors, officers, agents, employees, suppliers, or competitors, and the claims arise out of those relationships
- ☐ one of the parties is a non-profit organization, and the claims arise out of that party's organizational structure, governance, or finances
- ☐ It is an action involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

**AND**

2. **Actions**. This business or commercial action as defined by *MCL 600.8031(2)* involves,

- ☐ information technology, software, or website development, maintenance, or hosting
- ☑ the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers
- ☐ contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including but not limited to, alternative dispute resolution processes prescribed in the agreements
- ☐ commercial transaction, including commercial bank transactions
- ☐ business or commercial insurance policies
- ☐ commercial real property
- ☐ other type of business or commercial dispute (explain):

06/24/2019
Date

/s/ Keefe A. Brooks
Signature

Keefe A. Brooks — 31680
Name (type or print) — Bar no.

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

**Ernst & Marko Law, PLC, and Jonathan R. Marko,**

Plaintiffs,

Hon.

v

Case No. -CB

**Kevin S. Ernst,**

Defendant.

_______________________________________________/

Brooks Wilkins Sharkey & Turco PLLC
Keefe A. Brooks (P31680)
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800 / 248-971-1801 Fax
brooks@bwst-law.com

There is no other civil action pending or previously filed and dismissed action between the parties to this action.

/s/ Keefe A. Brooks
Keefe A. Brooks

**VERIFIED COMPLAINT FOR DISSOLUTION AND OTHER RELIEF**

Plaintiffs Jonathan R. Marko ("Marko") and Ernst & Marko Law, PLC (the "Firm"), for their Verified Complaint for dissolution of the Firm, and for other/additional relief against Defendant Kevin S. Ernst ("Ernst"), state as follows:

1. Marko is a resident of Wayne County, Michigan and conducts business in Wayne County, Michigan.

2. Ernst is a resident of Wayne County, Michigan and conducts business in Wayne County, Michigan.

3. The Firm has it registered office in and conducts business in Wayne County, Michigan.

4. This action is a business dispute within the meaning of MCL 600.8031 et seq. in that one of the parties is a business enterprise and the subject matter of the suit involves the rights and obligations of the members of that business enterprise.

5. The amount in controversy herein is in excess of $25,000 exclusive of interest, costs or attorney fees and this Verified Complaint seeks equitable relief within the exclusive jurisdiction of this Court.

6. In late 2015, Marko decided to form a firm with Ernst for the practice of law.

7. On December 14, 2015, Articles of Organization were endorsed by the State of Michigan for the formation of a professional limited liability company, the Firm.

8. While Marko and Ernst agreed they would own the Firm equally, no operating agreement or other agreement was ever entered into among the members of the Firm regarding the operation or governance of the Firm, or any other matters pertaining to the business of the Firm.

9. Unknown to Marko at the time the Firm was formed, Ernst has a serious substance abuse problem, namely Ernst is an alcoholic.

10. Unknown to Marko at the time the Firm was formed, Ernst had two prior convictions for driving while under the influence of alcohol.

11. In very early 2017, approximately one year after the Firm opened for business, Ernst was arrested and charged with his third offense of driving while under the influence of

alcohol, Oakland County case no. 17-261695-FH. Since this was Ernst's third offense, it was charged as a felony.

12. Ernst was eventually convicted of this third offense of driving while under the influence, a felony, and was sentenced to jail time and probation.

13. As a result of the felony conviction, Ernst's license to practice law in the State of Michigan was automatically suspended on September 5, 2017.

14. In later disciplinary proceedings, Ernst's license to practice law in the State of Michigan was suspended for a period of 180 days, effective September 5, 2017.

15. Shortly before Ernst's felony conviction and entry of the above Consent Order of Discipline, Ernst was involved in a traffic accident on August 18, 2017. Ernst fled the scene of the accident.

16. Ernst was chased down by the occupants in the other vehicle and identified by them as the person who had fled the scene. Ernst was thereupon arrested and charged with a third OWI and leaving the scene of an accident.

17. Because Ernst had not yet been convicted in the 2017 OWI, he was mistakenly charged with a third OWI when it was actually his fourth.

18. The 2018 charge was set for trial in April of 2018. The occupants of the other vehicle who had identified Ernst as the driver of the vehicle that fled the scene did not appear for trial. The charges against Ernst were shortly thereafter dismissed.

19. Ernst did not disclose to Marko the existence of the fourth criminal charge. Ernst also did not disclose to Marko that he was delaying applying for reinstatement to practice law because of the pendency of that fourth criminal charge.

20. In addition to all of the foregoing, Marko had discovered that Ernst has used money of the Firm to fund the defense of both of the above-referenced criminal proceedings and the ethics proceedings brought in the 2017 and 2018 matters.

21. During the foregoing time-period, Marko repeatedly told Ernst that the two of them needed to dissolve the Firm and go their separate ways.

22. Notwithstanding Ernst's completion of his time in jail and the conditions of his probation, Ernst continues to abuse alcohol. Following his release from probation, Ernst's alcohol abuse has only gone from bad to worse.

23. Ernst was without a license to practice law for over a year. Following the September 5, 2017 suspension, Ernst delayed applying for reinstatement. This was most likely in view of the 2018 charges pending against him discussed above.

24. Ernst did not receive a license to resume practicing law until October 10, 2018, over 13 months after his licenses was suspended.

25. During for foregoing 13-month period (and after), Marko was forced to carry on the business of the Firm by himself.

26. Ernst has essentially ceased practicing law and/or generating cases for others at the Firm.

27. Ernst is out of the offices of the Firm much more than he appears in the offices.

28. Ernst is not regularly supervising or directing the handling of client matters by associates of the Firm.

29. Ernst has expressed to Marko that Ernst does not need to practice law or generate cases in order to remain an owner of the Firm.

30. During Ernst complete absence from the Firm, Marko has been able to generate hundreds of cases that Ernst had no role in either generating or handling, and Marko and the associates of the Firm are currently handling over 200 client matters.

31. The Firm cannot achieve its objectives in light of the foregoing and the complete deadlock between Ernst and Marko regarding the operations of the Firm.

32. Marko has repeatedly demanded that the Firm be dissolved and Ernst has repeatedly refused. There is therefore a deadlock regarding the need for dissolution of the Firm.

**COUNT I-Dissolution of the Firm**

33. Plaintiffs incorporate here all of the foregoing allegations.

34. Marko seeks dissolution of the Firm pursuant to the Michigan limited liability act, and MCL 450.4803 in particular.

35. In view of the erratic, and sometimes unlawful, behavior of Ernst, the Firm cannot continue to properly accomplish the objectives for which it was formed.

36. In view of the deadlock between Ernst and Marko, and for the protection of the clients of the Firm, the Firm should be dissolved, with the clients informed of the proceedings and given the choice to retain Ernst, Marko or alternative counsel.

WHEREFORE, Plaintiffs respectfully request that the Court enter a decree of dissolution of the Firm, and grant such further or alternative relief as the Court deems appropriate.

**COUNT II-Reimbursement by Ernst of Personal Expenditures**

37. Plaintiffs incorporate here all of the foregoing allegations.

38. Ernst has misappropriated funds of the Firm for non-Firm uses, to wit: payment of fees and expenses incurred in Ernst' criminal and disciplinary proceedings.

39. The funds used by Ernst are and were property of the Firm.

40. Ernst misappropriated approximately $40,000 of Firm funds for the above-referenced non-Firm matters.

WHEREFORE, Plaintiffs respectfully request that the Court enter an order directing Ernst to return the misappropriated funds to the Firm's accounts, and grant such further or alternative relief as the Court deems appropriate.

**COUNT III-Entry of a Status Quo Order**

41. Plaintiffs incorporate here all of the foregoing allegations.

42. The space currently occupied by the Firm is under a lease in the name of a defunct firm of which Ernst was a member. Ernst therefore has the direct relationship with the landlord for the space occupied by the Firm.

43. Ernst has threatened Marko that should Marko take action to dissolve the Firm or otherwise inform clients of the break-up of the Firm, Ernst will lock Marko out of the premises of the Firm.

44. The Firm (Marko and the associates) are currently serving approximately 225 client matters at the Firm. Should Ernst take any action to interfere with Marko and other attorneys at the Firm from accessing the premises, Marko, the Firm and the clients of the Firm will all suffer immediate and irreparable injury.

45. Should Ernst take any action to interfere with Marko and other attorneys at the Firm from accessing the premises, Marko, the Firm and the clients of the Firm would have no adequate remedy at law.

46. Ernst has no legal basis to exclude Marko or other attorneys of the Firm from accessing the premises and continuing to service the clients of the Firm during the pendency of these proceedings.

WHEREFORE, Plaintiffs pray that this Court will immediately enter a Status Quo Order, ordering and directing that Ernst take no action to interfere with Marko or other attorneys of the Firm from continuing to access the premises of the Firm and from otherwise accessing all files and systems needed to continue to properly represent the clients of the Firm, and grant such further or alternative relief as the Court deems appropriate.

Respectfully submitted,

Brooks Wilkins Sharkey & Turco PLLC

By: /s/ Keefe A. Brooks
Keefe A. Brooks (P31680)
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800
brooks@bwst-law.com

DATED: June 21, 2019

# VERIFICATION

I, Jonathan R. Marko, state that the factual statements in the above Verified Complaint are all true and accurate to the best of my knowledge and information.

______________________________
Jonathan R. Marko

Sworn to and subscribed before
me this 21 day of June, 2019

______________________________
Notary Public / THERESA SIENKO
My commission expires: 8/8/23

THERESA SIENKO
Notary Public, State of Michigan
County of Macomb
My Commission Expires Aug. 08, 2023
Acting in the County of OAKLAND

19-008709-CB FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 9/4/2019 12:16 PM Ebony Upshaw

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

ERNST & MARKO LAW, PLC
and JONATHAN R. MARKO,

Plaintiffs/Counter-Defendant,

Case No. 19-008709-CB
Hon. Brian R. Sullivan

v.

KEVIN S. ERNST,

Defendant/Counter-Plaintiff.

---

Brooks Wilkins Sharkey & Turco PLLC
Keefe A. Brooks (P31680)
Steve M. Ribiat (P45161)
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
Attorneys for Plaintiffs
248-971-1800 / 248-971-1801 Fax
brooks@bwst-law.com
ribiat@bwst-law.com

Eugene H. Boyle (P42043)
E.H. Boyle, P.C.
14950 East Jefferson Avenue
Suite 200
Grosse Pointe Park, MI 48230
One of the Attorneys for Defendant
(313) 344-4000
gene@ehboyle.com

Anthony L. DeLuca (P64874)
Anthony L. DeLuca, P.L.C.
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905
anthony@aldplc.com

---

**ORDER REGARDING CASH ADVANCES**

At a session of said Court, held in the City of Detroit,
County of Wayne, State of Michigan, on

9/3/2019

Present: BRIAN R. SULLIVAN
CIRCUIT COURT JUDGE

This comes before the Court upon the continued argument of the parties on Defendant's motion seeking injunctive relief and upon the Court's August 22, 2019 Order requiring the parties to appear for a conference to discuss an Order for cash advances; the parties appeared in Court on August 26, 2019 and the Court heard the parties' arguments; now, therefore, for the reasons stated on the record:

IT IS HEREBY ORDERED THAT:

1. When the net balance of the escrow account maintained by Rodney Crawford totals $300,000 or more, Mr. Crawford is authorized to make two $150,000 initial cash advances: one to Mr. Marko and one to Mr. Ernst.

2. Future monthly cash advances may be made based upon each party's need for funds as evidenced by documentation presented to Mr. Glendening and Mr. Crawford. The parties shall meet with Mr. Crawford and Mr. Glendening monthly to discuss the next month's cash advance. If it appears that a party was advanced too much or too little the prior month, the Court may adjust the amount advanced to the party to account for the overpayment or underpayment; such adjustment(s) may occur monthly or be done at the end of the case.

3. The Court is not making any findings or rulings at this time on how the fees or assets of Ernst & Marko PLC will ultimately be divided, and this Order is not a final determination or decision that such assets will be (or will not be) divided 50/50.

4. Neither Mr. Marko nor Mr. Ernst shall write any checks from any Ernst & Marko, PLC bank account until further order of this Court. Ernst & Marko, PLC's bookkeeper is authorized to write checks in the ordinary course of business and shall keep records of all such

transactions and report them to the parties, Mr. Glendening and Mr. Crawford as requested. Nothing in this Order modifies the Court's Order of August 23, 2019 regarding deposit of checks.

5. Counsel for Mr. Marko is to make inquiry of Mr. Marko about the circumstances of a $4,500 check payable to Donn Fresard as alleged in Defendant's supplemental filing for the August 26, 2019 hearing.

6. The hearing on Defendant's motion to dismiss Plaintiff's Verified Complaint currently noticed for September 13, 2019 is adjourned pending further order or notice from the Court.

7. This is not a final order and it does not dispose of this case.

IT IS SO ORDERED.

/s/ Brian R. Sullivan 9/4/2019

CIRCUIT COURT JUDGE

19-008709-CB FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 8/23/2019 12:08 PM Ebony Upshaw

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

ERNST & MARKO LAW, PLC
And JONATHAN MARKO,

Plaintiffs,

Case No: 19-008709-CB
Hon. Brian R. Sullivan

-vs-

KEVIN ERNST,

Defendant.

---

# ORDER

At a session of said Court, held in the City County Building, City of Detroit, County of Wayne, State of Michigan, on 8/23/2019

PRESENT: HONORABLE BRIAN R. SULLIVAN

Defendant having filed a motion seeking injunctive relief. Plaintiffs having filed a response, and the Court having been otherwise advised in the premises,

It is hereby ordered.

1. All checks received by the parties in connection with any cases filed by Ernst Marko Law, PLC, or Marko Law, PLC shall be delivered directly to Rodney Crawford for deposit into the escrow account he has opened to receive the checks ("Escrow Account").

2. All checks shall be accompanied by a proposed breakdown of (a) costs and expenses incurred in connection with the case; (b) the client's share of the fee; and (c) the

attorney fee. If not, a breakdown will be circulated as soon as practicable.
to Crawford with a copy to Wallace Glendening.

3. Copies of the checks and copies of the proposed breakdown shall be circulated to all counsel of record as well as Wallace Glendening.

4. Any objections to a proposed breakdown shall be submitted by 5:00 pm the next business day.to Glendening and to opposing counsel.

5. The parties shall provide Mr. Glendening and Mr. Crawford (with copies to opposing counsel) an itemized request for monthly operating and rent money to be paid from the Escrow Account to cover firm operating expenses, including, but not limited to, payroll, rent, utilities, insurance, and client cost advancement. That amount shall serve as a monthly base operating expense which can be amended based on need pursuant to party petition.

6. Rodney Crawford is authorized to make the payments each party to the firm by separate order of the court, not this order. Any payment made can be balanced at the end of the litigation, if necessary. The parties shall appear before the court on August 26, 2019 for the separate order. of money to be provided to each party

7. Defendant/Counter Plaintiff Kevin Ernst shall provide Defendant Jonathan Marko the password to access www.markolaw.com when Mr. Marko vacates the premises of Ernst Marko Law, PLC.

IT IS SO ORDERED.

/s/ Brian R. Sullivan 8/23/2019
BRIAN R. SULLIVAN
Circuit Court Judge

ISSUED:

19-008709-CB FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 7/24/2019 10:46 AM Ebony Upshaw

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

ERNST & MARKO LAW, PLC
and JONATHAN R. MARKO,

Plaintiffs,

Case No. 19-008709-CB
Hon. Brian R. Sullivan

v

KEVIN S. ERNST,

Defendant.

---

BROOKS WILKINS SHARKEY & TURCO PLLC
Keefe A. Brooks (P31680)
Steve M. Ribiat (P45161)
401 S. Old Woodward, Suite 400
Birmingham, Michigan 48009
248-971-1800 Ph / 248-971-1801 Fax
brooks@bwst-law.com
Attorneys for Plaintiffs

ANTHONY L. DELUCA, PLC
Anthony L. DeLuca (P64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905
anthony@aldplc.com
Attorney for Defendant

---

**STIPULATED ORDER REGARDING FACILITATOR AND OTHER ITEMS**

At a session of said Court, held in the City of Detroit,
County of Wayne, State of Michigan, on

7/24/2019

Present: BRIAN R. SULLIVAN
CIRCUIT COURT JUDGE

This comes before the Court upon the parties' stipulation; the parties appeared in Court on July 18, 2019 and counsel conferred with the Court in chambers; now, therefore:

IT IS HEREBY ORDERED THAT:

1. Wallace Glendening, Esq. is appointed as a facilitation transitioner and Court-appointed expert with the authority to facilitate disputes between the parties and to make sure that the transition of clients, funds and assets upon the dissolution of Ernst & Marko, PLC (Firm) is accomplished in a smooth, fair and just manner. Mr. Glendening is authorized to engage financial or transactional professionals as necessary to assist in his role.

2. The parties joint letter sent out on July 14, 2018 is the only method of communication with existing Firm clients or potential clients contacting the Firm regarding the Firm's dissolution and the transition of clients and their files to the client's counsel of choice. No phone call solicitations are permitted by or on behalf of either party.

3. Mr. Ernst is to provide the password to www.markolaw.com to Mr. Marko, but that web address shall remain at its present domain until Mr. Ernst consents or the Court authorizes its move to a different domain. Mr. Marko will work with and through Mr. Glendening for authorization to develop the www.markolaw.com website with either Mr. Ernst's consent or Court authorization.

4. Mr. Marko is authorized to access the Firm's storage facility to remove and use trial materials and equipment located therein. Mr. Marko will sign out such materials and equipment by advising Mr. Glendening of the removal of same, and will sign in such materials and equipment by advising Mr. Glendening of the return of same. The parties are encouraged to inventory the contents of the storage facility by video record.

5. Regarding the Firm's current website, Mr. Ernst shall return the video of Mr. Marko to the website as it was before it was removed. Mr. Ernst may also put up a similar video to

balance the content of the website if he chooses. Prospective clients expressing interest in the Firm's services through the website will be provided a copy of the joint letter identified in paragraph 2 above and both parties will be informed about the inquiry from the prospective client.

6. Plaintiffs' counsel is directed to investigate the allegation that a woman told Firm clients that associate attorney Steve Lovell was leaving the Firm and the client should transfer the file to Plaintiff. The Court made clear that if such calls were made and they were made at the request or direction of Plaintiff, the Court would address this issue at a later date.

7. This is not a final order and it does not dispose of this case.

IT IS SO ORDERED.

/s/ Brian R. Sullivan 7/24/2019

CIRCUIT COURT JUDGE

We stipulate to the entry of this Order:

BROOKS WILKINS SHARKEY & TURCO PLLC

*/s/ Steven M. Ribiat*
Keefe A. Brooks (P31680)
Steve M. Ribiat (P45161)
401 S. Old Woodward, Suite 400
Birmingham, Michigan 48009
248-971-1800 Ph / 248-971-1801 Fax
brooks@bwst-law.com
Attorneys for Plaintiffs

ANTHONY L. DELUCA, PLC

*/s/ Anthony L. DeLuca (w/consent)*
Anthony L. DeLuca (P64874)
14950 East Jefferson Avenue, Suite 170
Grosse Pointe Park, MI 48230
(313) 821-5905
anthony@aldplc.com
Attorney for Defendant